RUTH GRAF AND WALTER P. GRAF, HER HUSBAND, AND WALTER P. GRAF, ADMINISTRATOR, ETC., PLAINTIFFS-APPELLANTS, v. DOUGLAS TAGGERT AND ELEANOR TAGGERT, DEFENDANTS-RESPONDENTS.

Argued September 21, 1964—Decided October 19, 1964.

*Mr. Edward J. Johnson, Jr.,* argued the cause for the plaintiffs-appellants (*Mr. Samuel Chiaravalli,* attorney).

*Mr. Francis J. Beyrent* argued the cause for the defendants-respondents (*Messrs. Schenck, Price, Smith & King,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The sole question on this appeal is whether there is a right of recovery under the New Jersey Death Act, *N. J. S.* 2A:31–1 *et seq.,* by the administrator *ad prosequendum* of a stillborn child who died as a result of injuries received while *en ventre sa mere.*

The facts are stipulated. On June 16, 1962 Mrs. Graf was injured in a collision between her husband's automobile, which she was driving, and defendants' vehicle. At that time she was seven months pregnant and as a result of the collision her unborn child suffered injuries from which it subsequently died and was stillborn on July 10, 1962. Mrs. Graf brought a negligence action to recover for the injuries she sustained. Mr. Graf sued *per quod.* In the third count of the complaint

he also sued as administrator *ad prosequendum* of the estate
of the stillborn child, seeking recovery for the benefit of Mrs.
Graf, himself, and their two sons under the Death Act. On
defendants' motion for summary judgment as to the wrong-
ful death count, the trial court held that as a matter of law
no cause of action exists under the statute where the child is
not born alive. From a final judgment dismissing the wrong-
ful death count the plaintiffs appealed. *R. R.* 4:55–2. This
Court certified the matter before argument in the Appellate
Division. *R. R.* 1:2–1(d).

Our Death Act in pertinent part provides:

"2A:31–1.
When the death of a person is caused by a wrongful act, neglect or
default, such as would, if death had not ensued, have entitled the
person injured to maintain an action for damages resulting from the
injury, the person who would have been liable in damages for the
injury if death had not ensued shall be liable in an action for damages,
notwithstanding the death of the person injured and although the
death was caused under circumstances amounting in law to a crime."
"2A:31–5.
In every action brought under the provisions of this chapter the
jury may give such damages as they shall deem fair and just with
reference to the pecuniary injuries resulting from such death to the
persons entitled to any intestate personal property of the decedent."

The plaintiffs contend that an unborn child is a "person"
within the meaning of that term as used in *N. J. S.* 2A:31–1.
They rely on *Smith v. Brennan,* 31 *N. J.* 353 (1960), where
this Court held that a child may recover for tortiously in-
flicted prenatal injuries. They argue that since a child could
maintain such an action had it survived, the statute therefore
creates in them the right to recover damages for its death.
But this argument begs the question whether an unborn child
is a person within the meaning of the statute.

The language in section 1 (*N. J. S.* 2A:31–1):
"* * * such as would, if death had not ensued, have entitled
the person injured to maintain an action for damages * * *."
was a limitation intended to preclude recovery where the in-
jured person could not have recovered because the defendant

did not commit a wrongful act or the deceased's own conduct would have barred his right to recover. See *Knabe v. Hudson Bus Transportation Co.,* 111 *N. J. L.* 333 (*E. & A.* 1933); *Batton v. Public Service Corporation of N. J.,* 75 *N. J. L.* 857 (*E. & A.* 1908). In short, if the deceased could not have recovered, his beneficiaries may not recover. But the converse of that proposition, *i. e.,* if the deceased could have recovered, the beneficiaries can, does not necessarily follow. Section 1 contains two conditions for recovery: (1) that the injured party be a "person" and (2) that he be entitled to recover if he had not died. That the satisfaction of the second condition does not determine the first condition is evident from this Court's opinion in *Smith v. Brennan, supra,* where we allowed recovery to a surviving child for his prenatal injuries, but said 31 *N. J.,* at *p.* 364:

"The semantic argument whether an unborn child is a 'person in being' seems to us to be beside the point. There is no question that conception sets in motion biological processes which if undisturbed will produce what every one will concede to be a person in being. If in the meanwhile those processes can be disrupted resulting in harm to the child when born, it is immaterial whether before birth the child is considered a person in being. And regardless of analogies to other areas of the law, justice requires that the principle be recognized that a child has a legal right to begin life with a sound mind and body."

See also *In re Peabody,* 5 *N. Y. 2d* 541, 186 *N. Y. S. 2d* 265, 158 *N. E. 2d* 841 (*Ct. App.* 1959).

A number of jurisdictions have been called on to decide whether an unborn child is a person under wrongful death act provisions which are similar or identical to our section 1. The decisions are in conflict. Several hold that a viable fetus, *i. e.,* one capable of independent existence apart from its mother, is a person. *Fowler v. Woodward, S. C.,* 138 *S. E. 2d* 42 (*Sup. Ct.* 1964); *State, Use of Odham v. Sherman,* 234 *Md.* 179, 198 *A. 2d* 71 (*Ct. App.* 1964); *Mitchell v. Couch,* 285 *S. W. 2d* 901 (*Ky. Ct. App.* 1955); *Verkennes v. Corniea,* 229 *Minn.* 365, 38 *N. W. 2d* 838, 10 *A. L. R. 2d* 634

(*Sup. Ct.* 1949) ; *Rainey v. Horn,* 221 *Miss.* 269, 72 *So.* 2*d* 434 (*Sup. Ct.* 1954). On the other hand, several hold that the unborn child is not a person. *Drabbles v. Skelly Oil Co.,* 155 *Neb.* 17, 50 *N. W.* 2*d* 229 (*Sup. Ct.* 1951) ; *Howell v. Rushing,* 261 *P.* 2*d* 217 (*Okla. Sup. Ct.* 1953) ; *Durrett v. Owens,* 371 *S. W.* 2*d* 433 (*Tenn. Sup. Ct.* 1963). Commentators are likewise in disagreement. See Notes, 15 *Mo. L. Rev.* 211, 212, 230 (1950). Some cases have held the unborn child a "person" by use of analogy to criminal and property law. *E. g., Poliquin v. MacDonald,* 101 *N. H.* 104, 135 *A.* 2*d* 249 (*Sup. Ct.* 1957). But see *Carroll v. Skloff,* 415 *Pa.* 47, 202 *A.* 2*d* 9 (*Sup. Ct.* 1964). (Reaching a conclusion contrary to a prior federal decision interpreting Pennsylvania law. *Gullborg v. Rizzo,* 331 *F.* 2*d* 557 (3 *Cir.* 1964).) For a general discussion see White, "The Right of Recovery for Prenatal Injuries," 12 *La. L. Rev.* 383 (1952). Other authorities have stated that the law considers the unborn child a person in being only where it is to the child's benefit, and a wrongful death recovery does not benefit the child but his survivors. *In re Scanelli,* 208 *Misc.* 804, 142 *N. Y. S.* 2*d* 411 (*Surr. Ct.* 1955) ; Comment, 21 *Ohio St. L. J.* 677, 678 (1960). There are respectable arguments on both sides as to whether an unborn child is a person within the meaning of wrongful death acts. However, it is not necessary for us to base our decision in this case on the resolution of that debatable issue.

█ We have pointed out that section 1 (*N. J. S.* 2A:31–1) contains two prerequisites to the right to recover. Section 5 (*N. J. S.* 2A:31–5) contains another. That section provides : "* * * the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death * * *." Lord Campbell's Act, 9 & 10 *Vict., c.* 93 (1846), the English ancestor of our Death Act and most other wrongful death acts in this country, did not expressly limit damages to pecuniary injuries, but the English courts shortly thereafter created such a limitation. *Blake v. Midland Ry. Co.,* 18 *Q. B.* 93, 118 *Eng. Rep.* 35 (1852). When our statute was enacted in 1848 it expressly limited damages to

pecuniary loss. The same limitation remains today.[1] The act created a new cause of action for the loss suffered by the designated beneficiaries, measured by their reasonable expectations of pecuniary advantage from the continuance of the life of the deceased. *Paulmier, adm'r of Carhart v. Erie R. R. Co.*, 34 *N. J. L.* 151 (*Sup. Ct.* 1870). In the absence of pecuniary loss the cause of action will not lie. *Cooper v. Shore Electric Co.*, 63 *N. J. L.* 558, 567 (*E. & A.* 1899); *Turon v. J. & L. Construction Co.*, 8 *N. J.* 543, 556 (1952). In the latter case nominal damages were allowed on appeal. *Id.*, at *p.* 561. But there was no question that the decedent's widow had sustained a substantial pecuniary loss. The only issue was whether that loss had been fully compensated by a settlement with joint tortfeasors.

▋ Included in pecuniary loss are not only net earnings but also loss of services having a pecuniary value which the decedent, had he lived, might have rendered. Loss is not limited within the minority of a child, but may include the depri-

---

[1] Our limitation of damages to pecuniary loss is in contrast to the wider damages allowed for wrongful death in many other jurisdictions. Some states expressly incorporate in their wrongful death statutes provisions allowing survivors to recover damages for their mental anguish. For example, the Kansas statute provides damages for "(a) mental anguish, suffering or bereavement; (b) loss of society, companionship, comfort or protection * * *." *Kan. Gen. Stat. Ann.* § 60–3203 (*Supp.* 1961). See also *Arkansas Stat.* § 27–909 (*Repl.* 1962); and *Florida Stat.* § 768.03 (1953). Other states, including Virginia, West Virginia, Louisiana, South Dakota, and South Carolina, allow damages for mental anguish without express statutory provisions, but none of their statutes expressly limits damages to pecuniary injuries. *E. g.*, *S. C. Code* § 10–1954 (1962). See *Gomillion v. Forsythe*, 218 *S. C.* 211, 62 *S. E.* 2d 297, 53 *A. L. R.* 2d 169 (*Sup. Ct.* 1950), holding that mental shock, suffering, grief, sorrow, and loss of companionship and society were all proper elements of wrongful death damages.

Several state statutes expressly allow damages for loss of society and companionship. *E. g.*, *Wyo. Stat. Ann.* § 1–1066 (1957); *Wis. Stat.* § 331.03–.04 (1958) (*Supp.* 1963). Others (including Georgia, Mississippi, Idaho and the states which allow damages for mental anguish), where there is no express statutory provision, allow recovery for loss of society and companionship. *E. g.*, *Jackson v. Town of Port Gibson*, 146 *Miss.* 696, 111 *So.* 828 (*Sup. Ct.* 1927). Some states allow recovery for loss of society and companionship but call

vation of possible pecuniary contributions which would have been made by the decedent thereafter. *McStay v. Przychocki,* 7 *N. J.* 456, 463 (1951). However, our courts have consistently construed pecuniary loss to exclude damages for mental suffering and loss of society. *Cooper v. Shore Electric Co., supra; McStay v. Przychocki, supra; Bohrman v. Pennsylvania R. R. Co.,* 23 *N. J. Super.* 399, 405 (*App. Div.* 1952). Such losses are virtually certain to follow from the loss of a child of any age.

By contrast, the younger the child is at the time of its death, the more speculative and uncertain the pecuniary loss. In *Bohrman, supra,* the court was concerned with the death of an eighteen-year-old girl. The plaintiffs were able to show that the girl was healthy and intelligent; that she had chosen a vocation, hair stylist, which would be lucrative to her and her parents; that her talents were above the average of those in that profession; and that she had been working in her parents' shop and intended to continue working there and eventu-

---

this a pecuniary loss (including California, Indiana, Missouri, Montana, Utah, and Washington). *E. g., Fuentes v. Tucker,* 31 *Cal. 2d* 1, 187 *P. 2d* 752 (*Sup. Ct.* 1947).

A number of states, like New Jersey, have expressly incorporated the pecuniary loss limitation in their wrongful death acts (*e. g., Illinois,* North Carolina, New York, Vermont, Ohio, Nebraska, Maine, Michigan, and Minnesota). Despite this language, a recent Michigan case has allowed recovery for loss of companionship. *Wycko v. Gnodtke,* 361 *Mich.* 331, 105 *N. W. 2d* 118 (*Sup. Ct.* 1960). See also *Fussner v. Andert,* 261 *Minn.* 347, 113 *N. W. 2d* 355 (*Sup. Ct.* 1961). See generally Page, "Pecuniary Damages for Wrongful Death," 7 *Trial Law, Guide* 122 (1963).

We also note that the wrongful death acts in Alabama and Massachusetts are punitive rather than compensatory. *Ala. Code tit.* 7 § 123, *tit.* 7 § 119 (1940) ; *Liberty National Life Ins. Co. v. Weldon,* 267 *Ala.* 171, 100 *So. 2d* 696, 61 *A. L. R. 2d* 1346 (*Sup. Ct.* 1958) ; *Mass. Gen. Laws Ann., ch.* 229 § 2 (1962). South Carolina and Kentucky expressly provide for punitive, as well as compensatory damages. *S. C. Code* § 10–1954 (1952) ; *Ky. Rev. Stat.* § 411.130(1) (1952). Other states reach the same result by judicial decision (including Mississippi and Tennessee). *E. g., Boroughs v. Oliver,* 226 *Miss.* 609, 85 *So. 2d* 191 (*Sup. Ct.* 1956)). And the Rhode Island statute provides that the minimum damages for wrongful death shall be $5,000. *R. I. Gen. Laws Ann.* § 10–7–2 (*Supp.* 1958).

ally take over the business. In *McStay, supra,* which involved the deaths of two boys, age ten and twelve years, plaintiffs were able to show that the boys were healthy and had good marks in school; that they helped the mother in the household; that one already had a paper route; and that they had a younger brother and sister whom they helped with lessons and in kindred matters. In *Greenberg v. Stanley,* 30 *N. J.* 485 (1959), the child was only five months old at death. Necessarily, plaintiffs were unable to show an established pattern of the health or ability of the child. Nevertheless, our courts allowed an award to the parents. As should be evident from the above cases, the degree of conjecture and speculation increases as the death of a child occurs at an earlier age. On the death of a very young child, nevertheless, at least some facts can be shown to aid in estimating damages as, for example, its mental and physical condition.

But not even these scant proofs can be offered when the child is stillborn. It is virtually impossible to predict whether the unborn child, but for its death, would have been capable of giving pecuniary benefit to its survivors. We recognize that the damages in any wrongful death action are to some extent uncertain and speculative. But our liberality in allowing substantial damages where the proofs are relatively speculative should not preclude us from drawing a line where the speculation becomes unreasonable. It has been argued that speculation and conjecture can be dealt with in individual cases by the court in response to the specific proof offered in a particular case. Del Tufo, "Recovery for Prenatal Torts: Actions for Wrongful Death," 15 *Rutgers L. Rev.* 61, 78 (1960). This court accepted that argument in *Smith v. Brennan, supra,* 31 *N. J.,* at *pp.* 365–366, with respect to proof of causal relationship between a negligent act and the resulting injury suffered by the unborn child who survived. But we noted that the remote and speculative character of the damage might bar relief in prenatal death cases. *Id.,* at *pp.* 356–357.

Where causal relationship is at issue, the proofs may vary from speculative to highly probable. Factors which might dif-

ferentiate one case from another include the nature and severity of the trauma, the period during pregnancy when the injury was suffered, and the nature of the injury. Compare, for example, the relative certainty as to causation in *Rainey v. Horn, supra,* where a doctor was alleged to have forcibly attempted to extract with forceps a full-term, living baby from its mother's womb, with *Sinkler v. Kneale,* 401 *Pa.* 267, 164 *A. 2d* 93 (*Sup. Ct.* 1960), and *Puhl v. Milwaukee Automobile Insurance Co.,* 8 *Wis. 2d* 343, 99 *N. W. 2d* 163 (*Sup. Ct.* 1960), where the mothers, allegedly one month and twelve weeks pregnant respectively when injured in automobile collisions, gave birth to Mongoloid children. See Reed, "Prenatal Injuries: Development of the Right of Recovery," 162 *Ins. L. J.* 687, 692–94 (1962); and Note, "The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries," 110 *U. Pa. L. Rev.* 554 (1962). See also *Valence v. Louisiana Power & Light Co.,* 50 *So. 2d* 847 (*La. Ct. App.* 1951).

■■ By contrast, the anticipated evidence on the issue of damages for loss of pecuniary benefit in prenatal death cases is *uniformly* speculative. The parents or other beneficiaries will merely be able to show their respective ages and economic and social status. There can be no evidence as to the child's capabilities and potentialities. In short, there can be no evidence from which to infer pecuniary loss to the surviving beneficiaries. Our Death Act was not intended to grant damages against a tortfeasor merely to punish him. We therefore hold that under our Death Act there can be no right of recovery for the wrongful death of an unborn child.

We recognize that the line we draw here is, in a sense, arbitrary. But such lines are as necessary and inevitable elements of judicial decision-making as they are of legislative lawmaking. Most of the authorities who have considered the problem of remote and speculative damages in prenatal death cases are in accord with our view. Harper and James in their treatise on torts, after advocating that a child who has suffered a prenatal injury should have a right of recovery, conclude:

"What has been said leaves untouched the case where prenatal injury results in death of the child before birth. Here, of course, the mother may recover for her injury including the miscarriage, and the only question is whether the estate of the unborn child may have a separate recovery. To allow it would recognize an interest in being born alive. And however great the spiritual and moral value of such an interest, its claim to pecuniary compensation is far more tenuous and doubtful than that of the child who lives to bear the seal of defendant's negligence with all the conscious suffering and economic loss it may entail. Few cases have allowed separate recovery where the child is not born alive, and perhaps this is the fairest and most practical place to draw the line. It, too, would make arbitrary distinctions—as between the child killed just before delivery and one who dies just after—but this sort of thing will be encountered wherever there must be a borderline. Perhaps also there should be a qualification that the child be viable at the time of birth." 2 *Harper and James, Torts* § 18.3, at *p.* 1031 (1956).

See also *Carroll v. Skloff, supra; In re Logan's Estate,* 4 *Misc. 2d* 283, 156 *N. Y. S. 2d* 49 (*Surr. Ct.* 1956), affirmed on opinion below 2 *A. D. 2d* 842, 156 *N. Y. S. 2d* 152 (*App. Div.* 1956), leave to appeal denied 2 *A. D. 2d* 886, 157 *N. Y. S. 2d* 900 (*App. Div.* 1956), affirmed 3 *N. Y. 2d* 800, 166 *N. Y. S. 2d* 3, 144 *N. E. 2d* 644 (*Ct. App.* 1957); *Norman v. Murphy,* 124 *Cal. App. 2d* 95, 268 *P. 2d* 178 (*D. Ct. App.* 1954); Note, 3 *Vand. L. Rev.* 282, 295 (1950). *Cf. Keyes v. Construction Service, Inc.,* 340 *Mass.* 633, 165 *N. E. 2d* 912 (*Sup. Jud. Ct.* 1960). But see *State, Use of Odham v. Sherman, supra* (4–3 decision).

There are compelling policy reasons, set forth in *Smith v. Brennan, supra,* for allowing recovery where a child born alive and suffering from prenatal injuries sues for damages. In that situation the child bears the mark of defendant's wrong as a physical or mental deformity which could handicap him for the rest of his life; and could require him, his parents, or the state to expend considerable sums of money on his behalf. These reasons do not exist where the child is stillborn. *In re Logan's Estate, supra; Carroll v. Skloff, supra.*

We add that the wrong suffered does not go completely unrecompensed. If the defendants were negligent, Mrs. Graf can recover for the injuries she sustained, both physical and

mental, including the emotional upset attending the stillbirth. See *Carter v. Public Service Coord. Transport,* 47 *N. J. Super.* 379, 390 (*App. Div.* 1957). See also Annotation, 145 *A. L. R.* 1104 (1943); *cf. Greenberg v. Stanley,* 51 *N. J. Super.* 90, 105–108 (*App. Div.* 1958), affirmed 30 *N. J.* 485 (1959).

Affirmed.

FRANCIS, J., concurring in result.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.