SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Robert B. Beim v. Trevor R. Hulfish (A-33/34-12) (071025)**

**Argued September 24, 2013 -- Decided January 28, 2014**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a change in the federal estate tax law after an alleged wrongful death can give rise to a viable claim for damages under the Wrongful Death Act (the Act), N.J.S.A. 2A:31-1 to -6.

In 2008, at the age of ninety seven, John Kellogg died following a motor vehicle accident allegedly caused by defendants' negligence. Kellogg's estate paid federal estate taxes pursuant to the tax laws applicable to the estates of decedents who died in 2008. Plaintiffs -- Kellogg's daughters, the executors of his estate and the trustee of a marital trust -- filed a wrongful death action seeking economic damages based on their claim that Kellogg's estate would have paid substantially less in federal estate taxes had Kellogg survived until 2009. The trial court dismissed plaintiffs' claims, holding that estate taxes did not constitute recoverable damages under the Act. It reasoned that the potential federal tax liability of the Kellogg estate, had Kellogg lived for an additional period after the accident, was too speculative to calculate, since tax rates for the estates of decedents who died in 2011 and beyond were yet to be determined by Congress. Plaintiffs moved for reconsideration after Congress enacted estate tax laws applicable to the estates of decedents who died in 2011 or 2012. The trial court denied reconsideration, finding that Congress's passage of the tax laws did not resolve its concern about speculation and that estate taxes are, in any event, not recoverable under the Act.

The Appellate Division reversed. Beim v. Hulfish, 427 N.J. Super. 560 (App. Div. 2012). The panel concluded that the estate tax losses alleged by plaintiffs would not compel the factfinder to engage in speculation. It held that by the time the trial court ruled on the motion for reconsideration, the estate tax laws for 2011 and 2012 had been established, and a jury guided by expert testimony would have been in a position to calculate damages. The panel accordingly reinstated plaintiffs' claims for estate tax losses as the measure of damages asserted as an element of their wrongful death claim. The Court granted certification. 212 N.J. 462 (2012).

**HELD**: The Wrongful Death Act does not authorize claims for damages based on estate taxes paid by a decedent's estate because such claims do not fit within the statutory cause of action defined by N.J.S.A. 2A:31-1 and the alleged damages do not constitute "pecuniary" losses as required by N.J.S.A. 2A:31-5.

1. Plaintiffs assert that pursuant to 2001 and 2010 amendments to the Internal Revenue Code, the tax burden on Kellogg's estate would have been significantly less had he died in any of the four years that followed 2008. The Court therefore considers whether a distinction in estate tax liability can give rise to a viable claim for damages under the Act. When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent. The Court begins with the language of the statute, giving the terms used therein their ordinary and accepted meaning, and reads them in the context of the overall scheme so as to give sense to the legislation as a whole. In addition, the Court broadly construes the Act in accordance with its salutary purpose to eliminate the inequity of denying all right of recovery for the death of a family member. (pp. 10-16)

2. Two of the Act's six subsections, N.J.S.A. 2A:31-1 and N.J.S.A. 2A:31-5, are central to the Court's analysis. N.J.S.A. 2A:31-1 defines the statutory cause of action as one that "would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." This Court has construed N.J.S.A. 2A:31-1 to permit a beneficiary to maintain a claim under the Act only if a claim could have been brought by the decedent had he lived. Graf v. Taggert, 43 N.J. 303 (1964); Aronberg v. Tolbert, 207 N.J. 587 (2011). N.J.S.A. 2A:31-5 permits the recovery of "pecuniary injuries resulting from [the decedent's] death." Under that provision, if the decedent's survivors prove the defendant's liability for wrongful death, they may be compensated for the economic contributions of which they have been deprived by virtue of the death. The inquiry centers not on the

1

needs of the heirs, but on what the decedent would have provided to those heirs during an extended lifetime. Such losses are compensable because they stand as a substitute for money that would have been provided during the lifetime of the decedent, had he or she survived. (pp. 16-21)

3. In Green v. Bittner, 85 N.J. 1 (1980), the Court expanded the category of pecuniary damages to include not only the loss of future financial contributions but also the lost value of services such as companionship and care and the loss of advice, guidance and counsel. The Court, however, limited damages for companionship and advice "strictly to their pecuniary element," with the value of the services determined in accordance with "what the marketplace would pay a stranger with similar qualifications for performing such services," with no value attached to the "emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger." Id. at 12. Thus, in assessing both financial and non-financial losses incurred because of a wrongful death, the focus is on the value of what the decedent would have contributed to his or her survivors during a continued lifetime. This Court has never deemed a loss that fails to meet that definition to be a "pecuniary" injury under N.J.S.A. 2A:31-5. (pp. 21-23)

4. While pecuniary losses under N.J.S.A. 2A:31-5 cannot be premised on speculation, an exact calculation of the plaintiff's damages may not be feasible in every case. "Where a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery — courts will fashion a remedy even though the proof on damages is inexact." Kozlowski v. Kozlowski, 80 N.J. 378 (1979). In determining whether the decedent would have contributed to the survivors and, if so, the value of his or her lost contributions, the jury should consider the various probabilities which, in the course of the years, might determine the pecuniary advantages which would accrue to the next of kin if the death had not occurred. Accordingly, the Act frames the determination of damages for pecuniary injuries in a wrongful death case. The survivors' cause of action is limited to claims that could have been asserted by the decedent had he or she survived. N.J.S.A. 2A:31-1. When calculating damages for "pecuniary injuries," the factfinder values as precisely as possible the financial support and non-economic services that the decedent would have contributed for the benefit of his or her survivors, had he or she lived. N.J.S.A. 2A:31-5. (pp. 23-25)

5. Plaintiffs' theory of damages is starkly different from the categories of losses held to constitute pecuniary injuries under the Act. Federal estate taxes bear no nexus to the financial support or the services that a decedent would have provided to his or her heirs had he or she survived. Kellogg's extended life is significant to plaintiffs' claims only insofar as it would have forestalled his estate's obligation to pay taxes until Congress had generated a more hospitable tax environment. In short, plaintiffs' damages theory is premised not on the contributions that Kellogg's heirs would have enjoyed during his continued lifetime, but on the tax benefits that they would have achieved as a result of his deferred death. Recognition of such damages would contravene the Legislature's clear intent when it prescribed a cause of action for wrongful death and would not advance the Legislature's objective to leave a decedent's heirs in no worse position economically than if their relative had lived. Accordingly, plaintiffs have not set forth a claim that is cognizable under N.J.S.A. 2A:31-1, and their alleged damages do not give rise to a "pecuniary" loss within the meaning of N.J.S.A. 2A:31-5. (pp. 25-29)

The judgment of the Appellate Division is **REVERSED**, and the judgment of the trial court dismissing plaintiffs' claims is **REINSTATED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and ALBIN; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUDGE RODRÍGUEZ (temporarily assigned) did not participate.**

ROBERT B. BEIM and FRANKLYN
Z. ARONSON, AS CO-EXECUTORS
OF THE ESTATE OF JOHN G.
KELLOGG AND BARBARA KELLOGG,
FRANKLYN Z. ARONSON AS
TRUSTEE OF THE ANNE D.
KELLOGG MARITAL TRUST AND
JUDITH MEDINA AND PRUDENCE
KRAUSE,

     Plaintiffs-Respondents,

        v.

TREVOR R. HULFISH AND TERESA
CUPPLES,

     Defendants-Appellants,

        and

RUSSELL MARKS, JR., AND
PATRICIA H. MARKS,

     Defendants,

        and

CHUBB INSURANCE COMPANY OF
NEW JERSEY,

     Defendant/Intervenor-
     Appellant.

     Argued September 24, 2013 – Decided January 28, 2014

     On certification to the Superior Court,
     Appellate Division, whose opinion is
     reported at 427 N.J. Super. 560 (2012).

     Richard J. Mirra argued the cause for
     appellants Trevor R. Hulfish and Teresa

Cupples (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).

John M. Bashwiner argued the cause for appellant Chubb Insurance Company of New Jersey (Bashwiner and Deer, attorneys; Mr. Bashwiner and Joseph A. Deer, on the briefs).

Jerrold Kamensky argued the cause for respondents (Kamensky Cohen & Riechelson, attorneys; Mr. Kamensky and Kristin J. Teufel, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

Under the Wrongful Death Act (the Act), N.J.S.A. 2A:31-1 to -6, the heirs of a person who has died by virtue of "a wrongful act, neglect or default" may assert a claim for their "pecuniary injuries." N.J.S.A. 2A:31-1, -5. The Court considers, for the first time, whether the Act authorizes claims for damages in the form of estate taxes paid by the decedent's estate.

John Kellogg, ninety-seven years of age, died in 2008 following a motor vehicle accident allegedly caused by the negligence of two of the defendants. His death occurred on the eve of significant changes in federal tax law. Plaintiffs -- Kellogg's daughters, the executors of his estate and the trustee of a marital trust -- allege that had Kellogg survived until 2009, his estate would have paid substantially less in taxes than it did under the tax laws governing in 2008. They further assert that if Kellogg died in any of the three years that followed, his estate would have paid no federal tax at all.

2

Plaintiffs contend that defendants should be held liable for the estate tax paid by Kellogg's estate under the federal tax laws that governed in 2008.

The trial court rejected this claim and granted defendants' motion to dismiss and motion for summary judgment. An Appellate Division panel reversed the trial court's determination and reinstated plaintiffs' claim, holding that the estate taxes constitute pecuniary injuries under the Act.

We reverse. We hold that the Act does not authorize plaintiffs' estate tax damages claim. The Legislature defined the statutory cause of action as one that "would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." N.J.S.A. 2A:31-1. Although several categories of economic and non-economic losses sustained by a decedent's heirs may constitute "pecuniary injuries resulting from [the decedent's] death" under N.J.S.A. 2A:31-5, plaintiffs' proposed estate tax claim would expand the Act beyond its intended parameters. Damages premised upon the distinctions between the estate tax laws that governed in succeeding years are unrelated to any contributions that decedent would have made to his heirs had he remained alive. Such damages do not advance the Legislature's objective to leave a decedent's heirs "in no worse position economically than if [their] relative had lived." Aronberg v. Tolbert, 207 N.J. 587,

3

603 (2011).  Accordingly, the trial court properly dismissed plaintiffs' claims.

I.

Kellogg and his first wife, Anne D. Kellogg, were the parents of two daughters, plaintiffs Judith Medina and Prudence Krause.  At the time of Anne D. Kellogg's death, the Anne D. Kellogg Marital Trust (Marital Trust) was formed.  Under the terms of the trust documents, the Marital Trust would provide income to Kellogg during his lifetime.  Following his death, the Marital Trust would be divided into two sub-trusts, one for each daughter.  Each sub-trust would provide lifetime income for the daughter, and upon the death of the daughter the principal of her sub-trust would be paid to her children.  Plaintiff Franklyn Z. Aronson is trustee of the Marital Trust, and he and plaintiff Robert B. Beim are co-executors of Kellogg's estate.

On January 25, 2008, Kellogg and his second wife, Barbara Kellogg, were passengers in a vehicle owned by Patricia Marks and driven by Russell Marks.  The Marks' vehicle collided with a car owned by defendant Teresa Cupples and driven by defendant Trevor Hulfish.  Kellogg sustained serious injuries.  He was hospitalized for a week, and then discharged to a rehabilitation center.  On February 6, 2008, Kellogg was readmitted to the hospital, where he died the following day.

4

On September 23, 2008, plaintiffs Beim and Aronson, as co-executors of Kellogg's estate, filed a federal "Estate (and Generation-Skipping Transfer) Tax Return" on the estate's behalf. Under the tax laws applicable to the estates of decedents who died in 2008, the Kellogg estate paid $1,196,083.57 in federal estate taxes.

Plaintiffs filed this action in the Law Division in November 2009.[1] In an amended complaint, plaintiffs asserted claims for negligence, survivorship and per quod damages against defendants. In one count of the amended complaint, the Kellogg estate's executors asserted a wrongful death claim, seeking damages under the Act. In another, the Marital Trust's trustee sought damages based upon "economic losses in the nature of Federal and State Estate Taxes and other related tax consequences that would not have been suffered but for [Kellogg's] death."[2] In other claims, Kellogg's daughters alleged economic losses resulting from the diminution in the value of the Marital Trust, allegedly due to defendants'

_____

[1] Barbara Kellogg was initially named as a plaintiff, but her claims were withdrawn by stipulation for reasons not relevant to the proceedings. Patricia and Russell Marks were named as defendants, but the parties stipulated to the dismissal of all claims against them, and they are not parties to this appeal.
[2] Although the amended complaint alleged a loss based on New Jersey estate taxes, the record does not indicate whether the Kellogg estate paid state estate taxes, and no party has addressed the impact of state estate tax laws. New Jersey estate tax rates did not change between 2008 and 2012. See N.J.A.C. 18:26-3A.3.

5

negligence. Chubb Insurance Company of New Jersey (Chubb), which had provided underinsured motorist coverage to Kellogg, moved to intervene in the action, and the trial court granted its motion.

Defendants Hulfish and Cupples, joined by the other defendants, moved under Rule 4:6-2 to dismiss the claims asserting economic losses allegedly suffered by the Marital Trust, or, in the alternative, for summary judgment pursuant to Rule 4:46-2. Plaintiffs stipulated that the Marital Trust's estate tax-based claims should be dismissed. They contended, however, that estate taxes were an element of damages available to Kellogg's heirs under their wrongful death claim. At trial, plaintiffs took the position that had Kellogg not sustained injuries in the 2008 accident, he would have lived until 2009 or 2010, but that he would not have lived until 2011. They argued that they should be permitted to present expert evidence that the estate would have paid significantly less in taxes had Kellogg survived until 2009 than it did following his death in 2008.

On December 8, 2010, the trial court granted defendants' motion to dismiss. The court held that estate taxes did not constitute recoverable damages under the Act. It reasoned that the potential federal tax liability of the Kellogg estate, had Kellogg lived for an additional period after the accident, was

too speculative to calculate, since tax rates for the estates of decedents who died in 2011 and beyond were yet to be determined by Congress.[3]

Shortly after the trial court's decision, and in the wake of Congress's extension of the estate tax exemption for estates up to $5,000,000 in value through the end of 2012, plaintiffs moved for reconsideration.  They argued that with the estate tax laws governing 2011 and 2012 estates now settled, a jury could accurately calculate estate tax losses, assuming that Kellogg would have died in one of those years.  The trial court was unpersuaded that its concern about speculation had been resolved by Congress's passage of tax laws governing estates of decedents who died in 2011 or 2012.  It reasoned that the 2011 and 2012 tax laws had yet to be determined when Kellogg died, and that estate taxes are, in any event, not recoverable under the Act. The court denied reconsideration of its order dismissing the three counts in which the Marital Trust asserted claims. Because no loss other than the payment of estate taxes had been alleged, the court granted summary judgment dismissing plaintiffs' remaining claims.

---

[3] The trial court did not reach defendants' standing challenge to plaintiffs' wrongful death claim.  Defendants alleged that because Kellogg's daughters were not dependent upon him for support, they could not recover under the Act.

Plaintiffs appealed, and the Appellate Division reversed. Beim v. Hulfish, 427 N.J. Super. 560, 564 (App. Div. 2012). Noting that the estate tax damages question was a novel issue under New Jersey law, and distinguishing decisions by courts in other jurisdictions rejecting similar claims, the panel concluded that the estate tax losses alleged by plaintiffs would not compel the factfinder to engage in speculation. Id. at 563, 568-75. It held that by the time the trial court ruled on the motion for reconsideration, the estate tax laws for 2011 and 2012 had been established, and a jury guided by expert testimony would have been in a position to calculate damages. Id. at 573-74. The panel accordingly reinstated plaintiffs' claims for estate tax losses as the measure of damages asserted as an element of their wrongful death claim. Id. at 563-64. It did not reach defendants' challenge to plaintiffs' standing to assert their claims. Id. at 576 n.11.

We granted certification. 212 N.J. 462 (2012).

II.

Defendants Hulfish and Cupples argue that estate taxes cannot be recovered in a wrongful death action. They note that the Act permits an action only when the person injured would have been entitled to maintain an action for damages resulting from the injury "if death had not ensued." N.J.S.A. 2A:31-1. Defendants assert that this language constrains the Court from

8

awarding estate tax damages, which would not be available to the survivor of an accident such as Kellogg's.

Defendants contest plaintiffs' construction of the term "pecuniary injuries" in N.J.S.A. 2A:31-5 to include any loss sustained by the decedent's estate. Relying upon authority from other jurisdictions, defendants argue that even if estate tax damages were contemplated by N.J.S.A. 2A:31-1 and -5, they would nonetheless be contrary to New Jersey law because prospective tax liabilities are inherently speculative. Finally, defendants challenge plaintiffs' standing to assert their claims on the ground that Kellogg's daughters were not dependent upon him for financial support at the time of his death.

Defendant-Intervenor Chubb argues that plaintiffs' claims are barred by N.J.S.A. 2A:31-1's limiting language, and by case law defining a pecuniary injury as the loss of a reasonable expectation of a pecuniary advantage that the heirs would have achieved had the decedent survived. Chubb disputes the Appellate Division panel's conclusion that estate tax damages are not unduly speculative. It invokes the example of a decedent who dies prematurely, decades short of his or her life expectancy, and contends that the expected tax liability of such a decedent's estate, had he or she lived a normal lifespan, would be impossible to ascertain. Chubb challenges plaintiffs' reliance on life expectancy tables to determine when Kellogg

9

would likely have died had he not sustained injuries in the 2008 motor vehicle accident.

Plaintiffs counter that the Act is remedial and must be construed liberally to achieve its legislative purpose. They argue that N.J.S.A. 2A:31-1 is irrelevant to the analysis, because it defines only the basis for a wrongful death action under the Act and does not address damages. Instead, plaintiffs urge the Court to rely entirely upon N.J.S.A. 2A:31-5. In plaintiffs' view, that provision reflects the Legislature's intent to expansively define the damages available under the Act, and authorizes claims for any loss that diminishes the value of the survivors' inheritance. To plaintiffs, adverse tax consequences are losses directly attributable to the decedent's death, and are therefore recoverable damages under the Act.

Plaintiffs dispute defendants' contention that the damages at issue are speculative. Citing Kellogg's advanced age and the restrictive provisions of the Marital Trust, they argue that the value of the survivors' inheritance and the impact of federal estate tax law were readily determinable in this case with the assistance of expert testimony.

### III.

The contention at the heart of this case is that successive amendments to federal estate tax law gave rise to a significant distinction between the estate tax burden that was imposed on

10

Kellogg's estate following his death in 2008 and the estate tax burden that would have been imposed on his estate had he died in a subsequent year. Several amendments to federal estate tax law that took effect shortly after Kellogg's death are thus germane to our analysis.

The Internal Revenue Code (Code) imposes "[a] tax . . . on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C.A. § 2001 (a).[4] The taxable estate is added to any taxable gifts, as defined in 26 U.S.C.A. § 2001(b)(2), to determine the estate's tax base. The tax base is then multiplied by the applicable tax rate, which varies in accordance with the value of the estate. 26 U.S.C.A. § 2001(c). That calculation generates the tentative tax, from which any credits authorized by law are deducted to determine the amount owed as estate tax. 26 U.S.C.A. §§ 2010-15. The tax credit that is directly pertinent to this case is the Unified Credit Against Estate Tax (Unified Credit), which equals the amount of the tentative tax, so long as the tentative tax does not exceed the applicable exclusion amount. 26 U.S.C.A. § 2010(c)(1). Thus, if the tentative tax calculated for an estate does not exceed the exclusion amount that applies

---

[4] The taxable estate is calculated by determining the gross estate, as prescribed by 26 U.S.C.A. § 2031, and "deducting from the value of the gross estate the deductions provided for" in 26 U.S.C.A. §§ 2051-58. 26 U.S.C.A. § 2051.

11

to the estate, which is prescribed in the relevant provision of the Code, the estate owes no federal taxes. 26 U.S.C.A. § 2010(c)(1).

The first amendment to the Code that affects this case was part of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, 115 Stat. 38 (2001) (2001 Amendments). Although the estate tax rate schedule set forth in 26 U.S.C. § 2001(c) was unaltered between 2008 and 2009, the maximum Unified Credit, which was $780,000 for estates of decedents who died in 2008, rose to $1,455,800 for estates of decedents who died in 2009. In addition, pursuant to the 2001 Amendments, the exclusion amount rose from $2,000,000 in 2008 to $3,500,000 in 2009. Economic Growth and Tax Relief Reconciliation Act of 2001, sec. 521(a). In short, the 2001 Amendments afforded significant tax relief to the estates of some decedents who died in 2009 that was unavailable to Kellogg's estate following his death in 2008.

For the estates of decedents who died in 2010, the 2001 Amendments afforded even greater tax relief. Those Amendments effected a one-year repeal of the federal estate tax for the estates of all 2010 decedents. Economic Growth and Tax Relief Reconciliation Act, sec. 501(a). When Kellogg died in February 2008, the estate tax repeal provision was scheduled to expire on December 31, 2010, limiting its impact to the estates of

decedents who died in that year.  Economic Growth and Tax Relief

Reconciliation Act of 2001, sec. 901(a)(2).  Had the 2001

Amendments expired as scheduled on that date, the tax relief

afforded by those Amendments would have been unavailable to the

estates of 2011 and 2012 decedents, and those estates would have

been taxed in accordance with the provisions of the Code that

had existed before 2001.  Economic Growth and Tax Relief

Reconciliation Act of 2001, sec. 901(b).

The federal tax burden on estates of decedents who died in

2011, however, substantially changed during the period between

the trial court's grant of defendants' original motion to

dismiss and the court's denial of plaintiffs' motion for

reconsideration.  On December 17, 2010, Congress passed the Tax

Relief, Unemployment Insurance Reauthorization, and Job Creation

Act of 2010, Pub. L. No. 111-312, 124 Stat. 3296 (2010

Amendments).  The 2010 Amendments extended the 2001 Amendments

to estates for an additional two years, applying them to the

estates of decedents who died between December 31, 2010 and

December 31, 2012.  Tax Relief, Unemployment Insurance

Reauthorization, and Job Creation Act of 2010, sec. 101(a)(1).

The 2010 Amendments also changed the tax rates applicable to

estates of decedents who died after December 31, 2009, and

raised the exclusion amount to $5,000,000 for those estates.

13

Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, sec. 302(a)(1).

Plaintiffs assert that these developments in federal tax law would have substantially benefited Kellogg's estate had he died in any of the four years that followed 2008. According to plaintiffs' calculations, if Kellogg had died in 2009 rather than 2008, his estate would have paid only $521,084 in federal taxes, less than half of what it paid under the laws in effect in 2008.[5] Plaintiffs further contend that by virtue of the temporary repeal of the federal estate tax for the estates of decedents who died in 2010, and the tax relief afforded by the 2010 amendments for the estates of decedents who died in 2011 and 2012, Kellogg's estate would have paid no tax at all had he died in any of those years.

IV.

In light of these changes to federal estate tax law, we consider whether the distinction between the liability imposed upon estates of decedents who died in 2008, and the liability imposed upon the estates of decedents who died thereafter, gives rise to a viable claim for damages under the Act.

---

[5] Because defendants' motion to dismiss was filed before the case reached the expert discovery stage, plaintiffs' calculation of the taxes that Kellogg's estate would have owed had he died in 2009 is unsupported by expert opinion, and defendants have not had the opportunity to contest that calculation.

14

Because the trial court's dismissal of plaintiffs' damages claim was premised upon statutory interpretation rather than the resolution of a factual dispute, we review its determination de novo. Zabilowitz v. Kelsey, 200 N.J. 507, 512 (2009); Twp. of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 86 (2007). Our analysis is governed by the familiar rules of statutory construction. "When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent." State v. Shelley, 205 N.J. 320, 323 (2011). To determine the Legislature's intent, we begin with the "language of the statute, giving the terms used therein their ordinary and accepted meaning." Ibid. It is not the Court's function to "'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero v. Penn, 183 N.J. 477, 492 (2005) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). Significantly for this case, which concerns two provisions of the Act, "[r]elated parts of an overall scheme can . . . provide relevant context." N.J. Dep't of Children and Families v. A.L., 213 N.J. 1, 20 (2013) (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012); In re Petition for Referendum on City of Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010)). The Court must "ascribe to the statutory words their ordinary meaning and

15

significance . . . and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero, supra, 183 N.J. at 492 (internal citations omitted). We broadly construe the Act in accordance with its "salutary purpose to eliminate the inequity of denying all right of recovery for the death of a family member." Alfone v. Sarno, 87 N.J. 99, 109 (1981).

The Act created by statute a remedy that did not exist at common law. Johnson v. Dobrosky, 187 N.J. 594, 605 (2006) (citing Negron v. Llarena, 156 N.J. 296, 308 (1998)); Alfone, supra, 87 N.J. at 107.[6] In 1846, Parliament ended the prohibition on wrongful death actions in English law with the passage of Lord Campbell's Act, "An Act for Compensating the Families of Persons killed by Accidents," 9 & 10 Vict., c. 93. Two years later, the New Jersey Legislature enacted its first wrongful death statute, substantially modeled after Lord Campbell's Act. P.L. 1848, p. 151 (March 3, 1848).

Two of the Act's six subsections are central to our analysis. The first is N.J.S.A. 2A:31-1, which defines the statutory cause of action:

---

[6] Prior to legislative regulation of wrongful death actions, "the theory that death extinguished a personal right of action barred any claim for wrongful death." Alfone, supra, 87 N.J. at 104 (citing 1 S. Speiser, Recovery for Wrongful Death, §§ 1:1 to 1:9 at 2-30 (2d ed. 1975)).

> When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

[N.J.S.A. 2A:31-1.]

In previous cases, this Court has construed the language of N.J.S.A. 2A:31-1. In Graf v. Taggert, the Court deemed that N.J.S.A. 2A:31-1 "intended to preclude recovery where the injured person could not have recovered because the defendant did not commit a wrongful act or the deceased's own conduct would have barred his right to recover." 43 N.J. 303, 305-06 (1964) (citing Knabe v. Hudson Bus Transp. Co., 111 N.J.L. 333 (E. & A. 1933); Batton v. Pub. Serv. Corp. of N.J., 75 N.J.L. 857 (E. & A. 1908)). "In short," the Court noted, "if the deceased could not have recovered, his beneficiaries may not recover." Id. at 306.

In Aronberg, supra, the Court held that the mother of an uninsured driver killed in a motor vehicle collision could not assert an action under the Act, given that any personal injury claim asserted by her son, had he survived, would have been

17

barred by N.J.S.A. 39:6A-4.5(a).  207 N.J. at 598-602, 605.[7]

Citing the intent of the Act's drafters "to bring parity both to

claims by a victim who lives and to claims by his survivors if

he dies," the Court held:

> The statutory language does not suggest that
> a claim that a victim cannot bring in life
> can only spring forth in the event of his
> death.  Indeed, N.J.S.A. 2A:31-1 gives the
> right of an heir 'to maintain an action for
> damages' only if a claim could have been
> brought by the decedent had he lived.  In
> this case, Aronberg, as an uninsured driver,
> could not have brought a claim against the
> alleged tortfeasor as a  consequence of the
> statutory bar.  See N.J.S.A.  39:6A-4.5(a).
> His heirs do not have any greater right than
> Aronberg possessed himself.
>
> [Id. at 603.][8]

The Court's decisions in Graf and Aronberg reaffirm the

Legislature's intent, expressed in N.J.S.A. 2A:31-1, to bar a

claim for wrongful death that could not have been asserted by a

---

[7] N.J.S.A. 39:6A-4.5(a), a provision of New Jersey's Automobile
Insurance Cost Reduction Act, bars an uninsured driver from
claiming "recovery of economic or noneconomic loss sustained as
a result of an accident while operating an uninsured
automobile."  In Aronberg, supra, the decedent had failed to pay
automobile insurance premiums and his policy was cancelled prior
to his fatal accident.  207 N.J. at 592.

[8] In Aronberg, supra, the Court distinguished the case before it,
in which the decedent never had the cause of action sought to be
asserted by his mother, from Miller v. Estate of Sperling, 166
N.J. 370 (2001).  207 N.J. at 603-05.  In Miller, the decedent
had a viable malpractice claim during her lifetime, but declined
to pursue it prior to the expiration of the statute of
limitations that governed that claim; her heirs were not barred
from asserting that claim after her death.  Aronberg, supra, 207
N.J. at 604-05 (citing Miller, supra, 166 N.J. at 382-83).

18

surviving plaintiff on his or her own behalf.  See Graf, supra, 43 N.J. at 305-06; Aronberg, supra, 207 N.J. at 605.  That expression of legislative intent guides our analysis.

The second section of the Act that is relevant to this case is N.J.S.A. 2A:31-5, which provides:

> In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased, to the persons entitled to any intestate personal property of the decedent in accordance with the provisions of N.J.S.A. 2A:31-4.
>
> [N.J.S.A. 2A:31-5.]

Although the limitation to "pecuniary" injuries was not a feature of Lord Campbell's Act, "English case law interpreting it quickly imposed the 'pecuniary' limitation, allowing purely monetary awards but forbidding those for loss of society or bereavement."  Johnson, supra, 187 N.J. at 606 (citing Stuart M. Speiser and Stuart S. Malawar, An American Tragedy: Damages for Mental Anguish of Bereaved Relatives in Wrongful Death Actions, 51 Tul. L. Rev. 1, 5-8 (1976)).  From its inception, New Jersey's Wrongful Death Act incorporated the "pecuniary" limitation upon damages, without defining that term in the statute itself.  P.L. 1848, p. 151 (March 3, 1848).

19

From the Legislature's use of the term "pecuniary injuries," two principles can be discerned. First, if the decedent's survivors prove the defendant's liability for wrongful death, they may be compensated for the economic contributions of which they have been deprived by virtue of the death. As the Court, citing federal authority, held in Smith v. Whitaker:

> An award of damages in a wrongful death action is not a matter of punishment for an errant defendant or of providing for decedent's next of kin to a greater extent than decedent himself would have been able, but is rather a replacement for that which decedent would likely have provided and no more. The amount of recovery is based upon the contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors.
>
> [160 N.J. 221, 231-32 (1999) (internal quotation marks omitted) (citing Alexander v. Whitman, 114 F.3d 1392, 1398 (3d Cir. 1997)).]

As the Court has noted, "[t]he measure of damages is the 'deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.'" Curtis v. Finneran, 83 N.J. 563, 569 (1980) (quoting Carter v. W. Jersey & Seashore R.R. Co., 76 N.J.L. 602, 603 (E. & A. 1908)). Thus, the inquiry centers not on the needs of the heirs, but on what the decedent would have provided to those heirs during an extended lifetime.

20

"The most common class of pecuniary injury under the Act is the loss of . . . financial contributions." Johnson, supra, 187 N.J. at 607. Calculation of economic losses in a wrongful death case "involves two basic determinations: is it probable that decedent would have contributed to the survivors and, if so, to what extent would contributions have been made?" Ibid. Thus, such losses are compensable because they stand as a substitute for money that would have been provided during the lifetime of the decedent, had he or she survived. See, e.g., Green v. Bittner, 85 N.J. 1, 4 (1980) (noting availability of damages for "anticipated direct financial contributions by the child after he or she becomes a wage earner"); Curtis, supra, 83 N.J. at 567-68 (permitting damages for future financial loss suffered by children because of their father's death); Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 470, 481 (1975) (allowing expert testimony on inflationary trends to show "future wage losses of the deceased").

Even when wrongful death damages are premised upon non-monetary losses, they are measured by the monetary value of the contributions that the decedent would have made to his survivors during his or her life had that life not been cut short. In Green, the Court "expanded the category of pecuniary damages to include not only the loss of future financial contributions but also the lost 'value' of services such as companionship and care

21

. . . and the loss of advice, guidance and counsel." Johnson, supra, 187 N.J. at 609 (citing Green, supra, 85 N.J. at 4). The Court limited damages for companionship and advice "strictly to their pecuniary element," with the value of the services determined in accordance with "what the marketplace would pay a stranger with similar qualifications for performing such services," with no value attached to the "emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger." Green, supra, 85 N.J. at 12 (footnote omitted). Because the question of damages turns on the services that the decedent would have provided had he or she been afforded the chance to live a longer life, the "mental, moral and physical characteristics of the decedent" relating to his or her relationship with the survivors "and the concomitant 'probability' of lost advice, guidance, and counsel" are relevant factors. Johnson, supra, 187 N.J. at 610—11.

Thus, in assessing both financial and non-financial losses incurred because of a wrongful death, the focus is on the value of what the decedent would have contributed to his or her survivors during a continued lifetime.[9] In its jurisprudence

---

[9] In a 1967 amendment to the Act, the Legislature added language authorizing three categories of damages that do not represent the decedent's lost contributions or his or her survivors: "hospital, medical and funeral expenses incurred for the deceased" in a wrongful death case. Assemb., No. 369, L. 1967, c. 307, §1 (amending N.J.S.A. 2A:31-5). The Assembly Statement

22

interpreting the Act, this Court has never deemed a loss that fails to meet that definition to be a "pecuniary" injury under N.J.S.A. 2A:31-5.

A second principle guiding our courts in assessing pecuniary losses in a wrongful death action under N.J.S.A. 2A:31-5 is that "[t]he Act 'permits recovery only of a survivor's calculable economic loss.'" Aronberg, supra, 207 N.J. at 593 (quoting Smith, supra 160 N.J. at 232). "'The law abhors damages'" that are based on "'mere speculation.'" Caldwell v. Haynes, 136 N.J. 422, 442 (1994) (quoting Lewis v. Read, 80 N.J. Super. 148, 174 (App. Div. 1963)). Nevertheless, our decisions recognize that a factfinder's determination of damages premised upon a decedent's lost contributions cannot always be conducted with precision. "Where a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery — courts will fashion a remedy even though the proof on damages is inexact." Kozlowski v. Kozlowski, 80 N.J. 378, 388 (1979).

---

specifically notes that the amendment was intended "to allow as a recoverable item of damage the hospital and medical expenses of the one wrongfully killed, together with funeral expenses heretofore not provided for under law." Statement Accompanying Assemb., No. 369, L. 1967, c. 307. Thus, the Legislature evidently considered "hospital, medical and funeral expenses" to be distinct from the "pecuniary injuries resulting from such death" that had previously been available to wrongful death plaintiffs under N.J.S.A. 2A:31-5.

In determining whether the decedent would have contributed to the survivors and, if so, the value of his or her lost contributions, "'the jury should . . . consider the various probabilities which, in the course of the years, might determine the pecuniary advantages which would accrue to the next of kin if the tragic event which gave rise to the action had not occurred.'" Johnson, supra, 187 N.J. at 607 (alteration in original) (quoting McStay v. Przychocki, 10 N.J. Super. 455, 462 (App. Div. 1950), aff'd 7 N.J. 456 (1951)). Thus, while pecuniary losses under N.J.S.A. 2A:31-5 cannot be premised on speculation, an exact calculation of the plaintiff's damages may not be feasible in every case.[10] As the Court has recognized, in calculating a pecuniary loss, "[a] jury's common knowledge and experience is always available to help it assess whether an aggregate sum or 'bottom-line' figure presented by counsel or an expert represents fair and just compensation." DeHanes, supra, 158 N.J. at 102.

Accordingly, the Act frames the determination of damages for pecuniary injuries in a wrongful death case. The survivors'

---

[10] The trial court's evidentiary determinations on pecuniary losses in wrongful death cases are, of course, governed by the applicable Rules of Evidence, including N.J.R.E. 702 and 703, which address the admissibility of expert testimony. See Dehanes v. Rothman, 158 N.J. 90, 100 (1999) (finding that in wrongful death case, "there is nothing so intrinsically unique about economic losses that the subject should cause [the Court] to refrain from following the regular rules regarding the introduction of expert testimony").

24

cause of action is limited to claims that could have been asserted by the decedent had he or she survived.  N.J.S.A. 2A:31-1.  When calculating damages for "pecuniary injuries," the factfinder values as precisely as possible the financial support and non-economic services that the decedent would have contributed for the benefit of his or her survivors, had he or she lived.  N.J.S.A. 2A:31-5.

V.

In that setting, we consider whether an increase in the applicable federal estate taxes between the date of the alleged wrongful death and subsequent years give rise to a compensable "pecuniary injur[y]" within the meaning of N.J.S.A. 2A:31-5, construed in light of the limiting provisions of N.J.S.A. 2A:31-1.

Plaintiffs' proposed estate tax damages are starkly different from the categories of losses held to constitute pecuniary injuries under the Act.  Economic losses, measured in accordance with educational, occupational, demographic and other relevant factors, derive from the decedent's expected contributions during his or her continued lifetime, whether that lifetime would have been be measured in months, years or decades.  See, e.g., Johnson, supra, 187 N.J. at 607; Smith, supra, 160 N.J. at 231; Curtis, supra, 83 N.J. at 570; Dubil v. Labate, 52 N.J. 255, 259 (1968); McStay v. Przychocki, 7 N.J.

25

456, 460 (1951).  Non-economic wrongful death damages are premised on such services as companionship, care, advice, guidance and counsel that the decedent would have provided to his or her survivors, had he or she continued to live.  See, e.g., Johnson, supra, 187 N.J. at 609; Green, supra, 85 N.J. at 4; Aronberg, supra, 207 N.J. at 593.

Federal estate taxes are inherently different from the damages recognized to be "pecuniary injuries" under N.J.S.A. 2A:31-5.  They bear no nexus to the financial support or the services that a decedent would have provided to his or her heirs had he or she survived.  Plaintiffs' theory of damages is unrelated to any contributions that Kellogg would have made to his survivors had he lived for additional weeks, months or years.  Instead, Kellogg's extended life is significant to plaintiffs' claims only insofar as it would have forestalled his estate's obligation to pay taxes until Congress had generated a more hospitable tax environment.  In short, plaintiffs' damages theory is premised not on the contributions that Kellogg's heirs would have enjoyed during his continued lifetime, but on the tax benefits that they would have achieved as a result of his deferred death.  Recognition of such damages would contravene

26

the Legislature's clear intent when it prescribed a cause of action for wrongful death.[11]

The estate tax damages sought by plaintiffs sharply differ from the income taxes that were held relevant in Tenore, on which plaintiffs rely.  In Tenore, supra, the Court reversed the trial court's order excluding the defendant's proffered evidence of the income tax that would have been imposed on the decedent had he lived.  67 N.J. at 484-85.  Rejecting the contentions that "an individual's future income tax liability is too speculative or conjectural," and that they are "too complicated for jury consideration," id. at 485, the Court stated:

> [W]e hold that under our wrongful death act, defendants must have an opportunity to cross-examine plaintiffs' witnesses to elicit testimony concerning deceased's

---

[11] Several courts in other jurisdictions have rejected similar claims.  See Hiatt v. United States, 910 F.2d 737, 744-45 (11th Cir. 1990) (applying Florida law to reject plaintiff's claim that had decedent "lived out his expected lifespan, his estate would have owed no estate taxes at the time of his death because of changes enacted in the tax laws since then"); Farrar v. Brooklyn Union Gas Co., 533 N.E.2d 1055, 1055 (N.Y. 1988) (declining to recognize plaintiff's claim that had his wife lived until 1987 instead of dying in 1982, her estate "would have realized the full benefit of the Federal estate tax credit and no Federal estate tax would have been due and paid"); Elliott v. Willis, 442 N.E.2d 163, 169 (Ill. 1982) (rejecting plaintiffs' claim that "prematurely paid" state and federal inheritance taxes assessed following death of their decedent constituted compensable pecuniary losses under Illinois law); Lindsay v. Allstate Ins. Co., 561 So.2d 427, 427 (Fla. Dist. Ct. App. 1990) (rejecting wrongful death damages claim based upon "the increased amount paid to the United States government for estate taxes as a result of decedent's premature death," due to estate's failure to achieve maximum unified credit).

27

income tax liability, or to develop the matter by extrinsic evidence, to the end that the jury be enabled to make an informed estimate, based upon the deceased's projected net income after taxes, of the survivor's pecuniary loss. Consequently, plaintiff's recovery must be calculated on the basis of the deceased's net income after taxes giving due regard to the evidence adduced on the deceased's income tax liability.

[Id. at 494-95 (footnote omitted).]

Accordingly, to the extent that it is authorized by the applicable rules of evidence, the admission of income tax liability estimates in a wrongful death action is consonant with the language and purpose of N.J.S.A. 2A:31-1 and -5. Evidence regarding potential income taxes permits the factfinder to more accurately evaluate the decedent's lost financial contributions. Estate taxes, in contrast, are irrelevant to decedent's lost contributions during his or her lifetime. Recognition of such damages would not further the Legislature's goal to ensure that a decedent's heirs are "in no worse position economically" than if he or she had survived. Aronberg, supra, 207 N.J. at 603.

Accordingly, we hold that plaintiffs have not set forth a claim that is cognizable under N.J.S.A. 2A:31-1, and that their alleged damages do not give rise to a "pecuniary" loss within the meaning of N.J.S.A. 2A:31-5. In short, plaintiffs' proposed damages are not authorized by N.J.S.A. 2A:31-1 and -5, we do not reach the question of whether a court should apply the law in

28

effect at the time of the decedent's death or the governing law at the time of the decision when it determines whether a claim for damages is unduly speculative.  We do not decide the issue of plaintiffs' standing, which was raised by defendants but not reached by the Appellate Division.

VI.

The determination of the Appellate Division is reversed, and the judgment of the trial court dismissing plaintiffs' claims is reinstated.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and ALBIN; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUDGE RODRÍGUEZ (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO. __A-33/34__                 SEPTEMBER TERM 2012

ON CERTIFICATION TO     __Appellate Division, Superior Court__

ROBERT B. BEIM and FRANKLYN
Z. ARONSON, AS CO-EXECUTORS
OF THE ESTATE OF JOHN G.
KELLOGG AND BARBARA KELLOGG,
FRANKLYN Z. ARONSON AS
TRUSTEE OF THE ANNE D.
KELLOGG MARITAL TRUST AND
JUDITH MEDINA AND PRUDENCE
KRAUSE,

       Plaintiffs-Respondents,

          v.

TREVOR R. HULFISH AND TERESA
CUPPLES,

       Defendants-Appellants.

DECIDED       __January 28, 2014__
       __Chief Justice Rabner__     PRESIDING
OPINION BY       __Justice Patterson__
CONCURRING/DISSENTING OPINIONS BY   _____
DISSENTING OPINION BY   _____

| CHECKLIST | REVERSE AND REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | ---------------------- | -------------------- |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |