SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## IE Test, LLC v. Kenneth Carroll (A-63-14) (075842)

**Argued February 2, 2016 -- Decided August 2, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers the Limited Liability Company Act (LLCA) and the circumstances under which N.J.S.A. 42:2B-24(b)(3)(c)(subsection 3(c)) authorizes the expulsion of a member of a limited liability company (LLC).

This appeal arises from a conflict among the three members of IE Test, LLC (IE Test), a business formed as an LLC. After a dispute between defendant Kenneth Carroll (Carroll) and the other members, Patrick Cupo (Cupo) and Byron James (James), IE Test filed an action to expel Carroll, pursuant to the LLCA. The dispute stemmed from the failure of a prior business in which IE Test's three LLC members were involved. In 2004, Carroll and Cupo formed Instrumentation Engineering, LLC (Instrumentation Engineering). Carroll owned a fifty-one percent interest in Instrumentation Engineering, and Cupo owned the remaining forty-nine percent. James was employed by Instrumentation Engineering, initially as Business Development Manager and later as Vice President.

In July 2009, Instrumentation Engineering filed for Chapter 7 bankruptcy. In that proceeding, Carroll claimed that Instrumentation Engineering owed him and his companies $2,543,318. As Instrumentation Engineering's business failed, its owners contemplated a new venture. Shortly before Instrumentation Engineering filed for Chapter 7 bankruptcy, Cupo formed IE Test as a New Jersey LLC. According to Cupo, two months after IE Test was formed, he sold a fifty-percent interest in the LLC to James. Carroll purchased the intellectual property and hardware that had been used in the business of Instrumentation Engineering from the trustee of that entity's estate in bankruptcy. Carroll claims that he transferred those assets to IE Test, but Cupo disputes that contention.

Carroll, Cupo, and James entered into a preliminary agreement stating intention to enter into an operating agreement for IE Test. They acknowledged that from the inception of IE Test, "the Members of the Company and their LLC Percentage Interests have been and are: Kenneth Carroll (33%), Pat Cupo (34%) [and] Byron James (33%)." IE Test reported revenue in the amount of $1,232,078 during the first half of 2010. Carroll's claim that Instrumentation Engineering owed substantial sums to him and his companies became a point of contention among Cupo, James, and Carroll soon after they agreed to share ownership of IE Test. Carroll acknowledged that IE Test had no legal obligation to repay him for losses sustained because of Instrumentation Engineering's bankruptcy, but pressed for compensation that would allow him to recover some of his lost investment. By early 2010, Cupo and James were actively pursing a strategy to use the LLCA to expel Carroll as a member of the LLC. Thereafter, IE Test filed this action, asserting claims for breach of fiduciary duty of loyalty, breach of fiduciary duty of care, breach of contract and breach of the implied covenant of good faith and fair dealing, and sought the expulsion of Carroll as an LLC member pursuant to N.J.S.A. 42:2B-24(b)(3)(a) (subsection 3(a)) or, in the alternative, under subsection 3(c).

Following discovery, IE Test filed a motion for partial summary judgment, in which it sought judgment in its favor based on two theories. First, invoking subsection 3(a), IE Test contended that Carroll had engaged in wrongful conduct that adversely and materially affected the LLC's business. Second, IE Test claimed that Carroll had engaged in conduct which made it not reasonably practicable to carry on IE Test's business and that he should be expelled from the LLC under subsection 3(c). The trial court rejected the subsection 3(a) claim, finding that Carroll's insistence on specific compensation terms did not amount to "wrongful conduct" within the meaning of subsection 3(a). The trial court, however, found in IE Test's favor on its claim based on subsection 3(c), reasoning that the "not reasonably practicable" language of subsection 3(c) imposed a less stringent standard than did subsection 3(a). The trial court granted IE Test's motion for partial summary judgment and expelled Carroll as an LLC member. Carroll appealed. In an unpublished opinion, an Appellate Division panel affirmed that judgment. The panel construed N.J.S.A. 42:2B-24(b)(3), and its counterpart provision in the Revised Uniform Limited Liability Company Act (RULLCA), N.J.S.A. 42:2C-46(e), to mandate that a trial judge engage in predictive reasoning in order to evaluate the future impact of an LLC member's current conduct. The panel found that Carroll's relationship with Cupo and James never recovered from Carroll's demand that he be compensated in a manner that permitted him to recoup his lost investment.

This Court granted Carroll's petition for certification. 222 N.J. 15 (2015).

1

**HELD:**  A disagreement among LLC members over the terms of an operating agreement does not necessarily compel the expulsion of a dissenting LLC member.  If an LLC's members can manage the LLC without an operating agreement, invoking as necessary the default majority-rule provision of the LLCA, then a conflict among LLC members may not warrant a member's expulsion under the LLCA.  Subsection 3(c) does not warrant a grant of partial summary judgment expelling Carroll from IE Test.

1.  Subsection 3(c), the provision at issue here, is part of the LLCA, which is a comprehensive statutory scheme that governed all New Jersey LLCs for two decades and was in effect when the trial court granted partial summary judgment. The statute was intended to be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.  It also provided several methods by which an LLC member could be disassociated from the LLC.   A member could be disassociated under the following circumstances: (a) the member engaged in wrongful conduct that adversely and materially affected the LLC's business; (b) the member willfully or persistently committed a material breach of the operating agreement; or (c) the member engaged in conduct relating to the LLC's business which makes it not reasonably practicable to carry on the business with the member as a member of the LLC.  If a court determines that an LLC member meets the standard of one of the three subsections, it must grant the remedy of expulsion.  (pp. 12-15)

2. When courts interpret statutes, words shall be read and construed to be given their generally accepted meaning.  The LLCA did not define the term "not reasonably practicable," or specifically describe the conduct that implicates subsection 3(c).  Comparing subsection 3(c) with subsection 3(a), which provided an alternative ground for the expulsion of an LLC member by judicial determination, helps discern the Legislature's intent.  To disassociate a member under subsection 3(a), a court must find that the member's wrongful conduct has adversely and materially affected the company's business.  In contrast, under subsection 3(c), the court prospectively analyzes the impact of that conduct on the LLC's future.  In short, LLC members seeking to expel a fellow member under subsection 3(c), or its counterpart in the RULLCA, <u>N.J.S.A.</u> 42:2C-46(e)(3), are required to clear a high bar.  In that inquiry, a trial court should consider: (1) the member's conduct relating to the LLC's business; (2) whether, with the member remaining a member, the entity may be managed so as to promote the purposes for which it was formed; (3) whether the dispute precludes them from working with one another to pursue the LLC's goals; (4) whether there is a deadlock; (5) whether, despite that deadlock, members can make decisions on the management of the company, pursuant to the operating agreement or in accordance with applicable statutory provisions; (6) whether there is still a business to operate; and (7) whether continuing the LLC, with the member remaining a member, is financially feasible. (pp. 16-21)

3. Here, the trial court's task was to view the evidence in the light most favorable to the non-moving party, and to decide whether the record was sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.  The record reveals genuine issues of material fact that warrant the denial of partial summary judgment and preclude the remedy of expulsion. By his own admission, Carroll had no legal right to recover his lost investment in Instrumentation Engineering through his interest in IE Test.  The record is devoid of evidence that Carroll actively interfered with IE Test's business.  Despite his insistence on generous compensation, Carroll permitted the LLC to operate unimpeded.  Applying the second and third factors, it appears that the business operated with increasing revenue despite the deteriorating relationship between Carroll and the other LLC members.  The fourth and fifth factors also weigh against the grant of partial summary judgment in this case.  IE Test has not claimed, let alone established, that the three LLC members reached a deadlock regarding the company's management.  Moreover, even Carroll's failure to agree on a counterproposal would not, without more, justify his expulsion as an LLC member.  In accordance with the LLCA, IE Test has been effectively managed without an operating agreement.  With all inferences drawn in favor of Carroll, the record does not demonstrate that any deadlock among the LLC members threatened IE Test's business. Thus, the fourth and fifth factors do not support the trial court's grant of partial summary judgment.  Under the sixth and seventh factors, the court considers whether, due to the LLC's financial position, there is still a business to operate, and whether it is fundamentally feasible for the company to continue in business with the LLC member remaining a member. Those factors similarly weigh against the trial court's grant of summary judgment on the record of this case.  There is no dispute that when the trial court ruled on IE Test's motion, the business remained in operation; indeed, its revenue evidently increased despite Carroll's continued involvement.  (pp. 22-26)

4. In sum, when the record is viewed in accordance with the summary judgment standard of <u>Rule</u> 4:46-2(c), it does not support the trial court's finding that it was "not reasonably practicable" to carry on IE Test's business with Carroll remaining an LLC member.  Accordingly, the trial court's grant of partial summary judgment constituted error. (p. 26)

The judgment of the Appellate Division is **REVERSED**.  The matter is **REMANDED** to the trial court for further proceedings consisted with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S OPINION.**

2

IE TEST, LLC,

 Plaintiff-Respondent,

   v.

KENNETH CARROLL,

 Defendant-Appellant.

    Argued February 2, 2016 – Decided August 2, 2016

    On certification to the Superior Court,
    Appellate Division.

    Paul A. Sandars, III, argued the cause for
    appellant (Lum, Drasco & Positan, attorney;
    Mr. Sandars and Scott E. Reiser, of counsel
    and on the brief).

    Eric J. Szoke argued the cause for
    respondent (Steven Robert Lehr, attorney).

 JUSTICE PATTERSON delivered the opinion of the Court.

 This appeal arises from a conflict among the three members

of IE Test, LLC (IE Test), an engineering consultant business

formed as a limited liability company (LLC).  In the wake of a

dispute about the terms of an operating agreement between

defendant Kenneth Carroll (Carroll) and the LLC's other members,

Patrick Cupo (Cupo) and Byron James (James), IE Test filed an

action to expel Carroll as an LLC member, pursuant to the

Limited Liability Company Act, N.J.S.A. 42:2B-1 to -70 (LLCA).

1

The trial court granted partial summary judgment and ordered that Carroll be disassociated from IE Test. It based its ruling on a provision of the LLCA that authorized the expulsion of an LLC member by "judicial determination" if the court finds that the member has engaged in conduct relating to the LLC's business "which makes it not reasonably practicable to carry on the business" with the LLC member remaining part of the LLC. N.J.S.A. 42:2B-24(b)(3)(c) (subsection 3(c)). The Appellate Division affirmed the trial court's judgment.

We construe the Legislature's intent when it enacted subsection 3(c) of the LLCA, and an analogous provision in the LLCA's successor statute, the Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-1 to -94 (RULLCA). We hold that a disagreement among LLC members over the terms of an operating agreement does not necessarily compel the expulsion of a dissenting LLC member. If an LLC's members can manage the LLC without an operating agreement, invoking as necessary the default majority-rule provision of the LLCA, then a conflict among LLC members may not warrant a member's expulsion under the LLCA. To assist trial courts in determining whether it is "not reasonably practicable" to operate an LLC in light of the LLC member's conduct, we adopt a series of factors.

Applied to the record of this case, the standard of subsection 3(c) does not warrant a grant of partial summary

2

judgment expelling Carroll from IE Test.  Accordingly, we reverse the Appellate Division's judgment and remand this matter to the trial court.

I.

We derive our summary of the facts from the summary judgment record.

The dispute that prompted this litigation stemmed from the failure of a prior business in which IE Test's three LLC members were involved.  In 2004, Carroll and Cupo formed Instrumentation Engineering, LLC (Instrumentation Engineering) pursuant to Delaware's LLC laws.  By agreement, Carroll owned a fifty-one percent interest in Instrument Engineering, and Cupo owned the remaining forty-nine percent.  James was employed by Instrumentation Engineering, initially as Business Development Manager and later as Vice President.

In July 2009, following a series of financial setbacks, Instrumentation Engineering filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of New Jersey.  In the bankruptcy proceeding, Carroll claimed that Instrumentation Engineering owed him and his companies $2,543,318.  Although the record does not reveal whether Instrumentation Engineering's debt to Carroll was discharged in bankruptcy, the parties agree that the company did not repay the debt.

3

As Instrumentation Engineering's business failed, its owners contemplated a new venture. Shortly before Instrumentation Engineering filed for Chapter 7 bankruptcy, Cupo formed IE Test as a New Jersey LLC. The LLC's business is the design of testing systems used by manufacturers to evaluate their products.

Cupo was initially IE Test's sole member. According to Cupo, two months after IE Test was formed, he sold a fifty-percent interest in the LLC to James. Carroll purchased the intellectual property and hardware that had been used in the business of Instrumentation Engineering from the trustee of that entity's estate in bankruptcy. Carroll contends that he transferred those assets to IE Test, but Cupo disputes that contention.

Carroll, Cupo, and James entered into a preliminary agreement. In that document, Carroll, Cupo, and James stated their intention to enter into an operating agreement for IE Test. They acknowledged that from the inception of IE Test, "the Members of the Company and their LLC Percentage Interests have been and are: Kenneth Carroll (33%), Pat Cupo (34%) [and] Byron James (33%)."

The LLC members were assigned divergent roles in the business of IE Test. Cupo managed the engineering, manufacturing, and financial components of the business. James

4

was responsible for business development. Carroll's role was limited; he was not expected to become involved in the day-to-day management of IE Test, and the record confirms that he did not do so. Carroll maintained no office at IE Test's facility and participated in only one sales call. IE Test does not contend that Carroll ever intervened, or attempted to intervene, in IE Test's day-to-day operations.

IE Test developed an increasingly successful business throughout the period in which it operated with Carroll as an LLC member. After a modest beginning in 2009, during which it earned $396,597, IE Test reported revenue in the amount of $1,232,078 during the first half of 2010. Cupo and James drew salaries in the amount of $170,000 per year, and several $10,000 bonuses. IE Test paid Carroll no salary or bonus at any time.

Carroll's claim that Instrumentation Engineering owed substantial sums to him and his companies became a point of contention among Cupo, James, and Carroll soon after they agreed to share ownership of IE Test. Carroll acknowledged that IE Test had no legal obligation to repay him for losses sustained because of Instrumentation Engineering's bankruptcy. He pressed, however, for compensation that would allow him to recover some of his lost investment in Instrumentation Engineering.

An e-mail exchange between Cupo and James in October 2009 described the two options proposed by Carroll as alternative frameworks for an operating agreement: either an arrangement whereby Carroll would be paid an equal share of IE Test's profits with a premium, or the payment of a salary to Carroll plus an equal share of the profits. James and Cupo then agreed that they did not want to work with Carroll. James commented, however, that Carroll would not "walk away" from the business unless Cupo and James agreed to one of his alternative proposals for his compensation.

It is unclear precisely when Cupo and James decided to file an action to disassociate Carroll as an LLC member pursuant to N.J.S.A. 42:2B-24(b)(3). By early January 2010, however, they were actively pursuing that strategy. In a January 5-6, 2010 e-mail exchange about the best way to remove Carroll as an LLC member, Cupo and James discussed the option of filing a lawsuit to expel him from the company. James wrote that "[n]o one is getting rich here and a third partner will most likely lead to the failure of the business."

The three LLC members met on January 7, 2010. According to Cupo and James, their plans for IE Test did not align with those of Carroll, and the company could not, then or in the foreseeable future, afford a third member. Carroll contends that Cupo and James declined to honor his ownership interest in

6

IE Test and refused to enter into an operating agreement. At that point, the three LLC members ceased communicating about the operation of their business.

## II.

IE Test filed this action on January 25, 2010, less than four months after Carroll, Cupo, and James signed their agreement allocating ownership of IE Test. It asserted claims for breach of fiduciary duty of loyalty, breach of fiduciary duty of care, breach of contract and breach of the implied covenant of good faith and fair dealing, and sought the expulsion of Carroll as an LLC member pursuant to N.J.S.A. 42:2B-24(b)(3)(a) (subsection 3(a)) or, in the alternative, under subsection 3(c).[1]

Through his counsel, Carroll proposed an operating agreement to Cupo and James on September 7, 2010. The record contains no evidence that Cupo or James produced a draft operating agreement after rejecting Carroll's proposal. It is undisputed that no operating agreement for IE Test was ever executed.

---

[1] Carroll filed a counterclaim against IE Test and a third-party complaint against Cupo and James, alleging that they agreed to compensate him for the money owed to him by the prior business, Instrumentation Engineering; that counterclaim was dismissed by stipulation.

7

Following the depositions of Carroll, Cupo, and James, and other discovery, IE Test filed a motion for partial summary judgment. It sought judgment in its favor on its claim for expulsion based upon two alternative theories. First, invoking subsection 3(a), IE Test contended that Carroll had engaged in "wrongful conduct that adversely and materially affected the limited liability company's business." N.J.S.A. 42:2B-24(b)(3)(a). Second, IE Test claimed that Carroll had engaged in conduct which made it "not reasonably practicable" to carry on IE Test's business, and that he should be expelled from the LLC pursuant to N.J.S.A 42:2B-24(b)(3)(c). In a cross-motion, Carroll sought summary judgment dismissing plaintiff's claims with prejudice and awarding counsel fees pursuant to the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1.

The trial court rejected IE Test's claim based on subsection 3(a). The court noted that Cupo and James wanted no further interaction with Carroll. It stated that it was skeptical that Carroll could remain a passive member of the LLC. Nonetheless, the court found that Carroll's insistence on specific compensation terms did not amount to "wrongful conduct" within the meaning of subsection 3(a). It concluded that although Carroll's demands may have been unreasonable, those demands were not unlawful, and inflicted no harm on IE Test.

8

The trial court, however, found in IE Test's favor on its claim based on subsection 3(c). It reasoned that the "not reasonably practicable" language of subsection 3(c) imposed a less stringent standard than did subsection 3(a). In its application of that standard, the trial court focused on problems that could arise in the future. The court stated that because of the LLC members' continuing dispute, it might prove impossible for Cupo and James to secure Carroll's approval of essential documents. The court concluded that Carroll's continued involvement would generate more controversy and further litigation. It therefore ruled that it was not "reasonably practicable" for the business to continue with Carroll involved, and that IE Test had satisfied the standard of subsection 3(c).

The trial court granted IE Test's motion for partial summary judgment and denied Carroll's cross-motion for summary judgment. It expelled Carroll as an LLC member, effective immediately. At Carroll's request, the court stayed its judgment of expulsion pending appeal. The trial court conducted a bench trial to determine the value of IE Test, and valued the LLC at $683,173.[2] The court then entered final judgment for Carroll in the amount of $227,497, representing thirty-three

---

[2] The trial court's valuation of IE Test is not before the Court in this appeal.

percent of the total value of IE Test, plus prejudgment interest in the amount of $14,976.

Carroll appealed the trial court's judgment. In an unpublished opinion, an Appellate Division panel affirmed that judgment. The panel construed N.J.S.A. 42:2B-24(b)(3) and its counterpart provision in the RULLCA, N.J.S.A. 42:2C-46(e), to mandate that a trial judge engage in predictive reasoning in order to evaluate the future impact of an LLC member's current conduct. The panel found that Carroll's relationship with Cupo and James never recovered from Carroll's demand that he be compensated in a manner that permitted him to recoup his lost investment. It reasoned that as a consequence of that rift, the continued operation of IE Test with Carroll as a member was not "reasonably practicable" under subsection 3(c).

We granted Carroll's petition for certification. 222 N.J. 15 (2015).

### III.

Carroll argues that the trial court's order disassociating him from IE Test deprived him of protections that the Legislature conferred on minority investors when it enacted the LLCA. He contends that the LLCA resolves any concerns about disruption in the company's management, because the statute provides for majority rule in management decisions in the absence of an operating agreement. Carroll notes the absence of

evidence that he interfered with the day-to-day running of the business, that he disparaged Cupo or James to employees, vendors or clients, or that he withheld necessary signatures on papers or information essential to the running of the business.  He argues that Cupo and James expelled him as an LLC member because it was financially advantageous for them to do so, and that they used the alleged impasse over an operating agreement as a pretext.  Carroll states that prior to the summary judgment proceedings, he was never advised that IE Test had difficulty securing financing and represents that he would be willing to assist in the financing of IE Test in the event that the lack of an operating agreement impedes the company's effort to obtain financing from a bank.

IE Test counters that the trial court's finding -- that it was not "reasonably practicable" for IE Test to continue in business with Carroll remaining an LLC member -- was firmly grounded in the record.  It argues that subsection 3(c) requires a trial court to anticipate future conflicts that may make it impossible to conduct the business with a dissenting LLC member. IE Test represents that the parties' impasse has already proven to be a significant impediment to its business.  It claims that in the absence of an operating agreement, it is unable to secure a line of credit or financing from a bank.

11

IE Test acknowledges that there are default provisions in the LLCA that permit an LLC to be managed by majority rule, but notes that there are some decisions, such as the admission of new LLC members or dissolution, that require unanimous consent. IE Test contends that it was inevitable that Carroll's dispute with the other LLC members would undermine IE Test's operations, and that the trial court and Appellate Division properly applied the LLCA's expulsion remedy.

IV.

A.

The provision at issue in this case, subsection 3(c), is part of the LLCA, a comprehensive statutory scheme that governed all New Jersey LLCs for two decades, and was in effect when the trial court granted partial summary judgment.[3] Pursuant to the LLCA, an LLC formed under its provisions or qualified to do business in New Jersey would be "classified as a partnership unless classified otherwise for federal income tax purposes, in which case the limited liability company shall be classified in

---

[3] The LLCA governed LLCs in New Jersey from its effective date, January 26, 1994, until March 18, 2013. L. 2012, c. 50, § 95. The LLCA was then repealed and replaced by the RULLCA, "a comprehensive, fully integrated 'second generation' LLC statute that takes into account the best elements of 'first generation' LLC statutes (such as [the LLCA]) . . . and two decades of legal developments in the field." Sponsors' Statement to Assembly No. 1543 (2012). All LLCs in New Jersey are now subject to the RULLCA. L. 2013, c. 276, § 9.

the same manner as it is classified for federal income tax purposes." N.J.S.A. 42:2B-69. The statute was intended "to be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." N.J.S.A 42:2B-66(a).

The LLCA authorized LLC members to enter into an operating agreement governing "the affairs of [an LLC] and the conduct of its business." N.J.S.A. 42:2B-2; see also N.J.S.A. 42:2B-22(a)-(b) (providing for operating agreement that sets forth classes or groups of members and prescribing rights, powers and duties of classes or groups of members); N.J.S.A. 42:2B-29(a)-(b) (authorizing operating agreement that sets forth classes and groups of managers and rights granted to them). The statute thus encouraged LLC members to collectively devise an individualized governance and management plan that best advanced the goals of their business.

The Legislature, however, understood that LLC members are not always in a position to agree on the terms of an operating agreement; it included in the LLCA default provisions for the management of an LLC without such an agreement. See Union Cty. Improvement Auth. v. Artaki, 392 N.J. Super. 141, 152 (App. Div. 2007) ("In the absence of an operating agreement, the [LLCA] provisions control."); Kuhn v. Tumminelli, 366 N.J. Super. 431, 440 (App. Div.) (same), certif. denied, 180 N.J. 354 (2004).

13

The LLCA required unanimous consent for the admission of new members pursuant to N.J.S.A. 42:2B-21(b)(1), or for the dissolution of the LLC in accordance with N.J.S.A. 42:2B-48(c). The statute, however, authorized the day-to-day management of the LLC by majority rule:

> Unless otherwise provided in an operating agreement, the management of [an LLC] shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the [LLC] owned by all of the members, the decision of members owning more than 50 percent of the then current percentage or other interest in the profits controlling[.]
>
> [N.J.S.A. 42:2B-27(a)(1).]

Thus, the Legislature ensured that even in the absence of an operating agreement, decisions regarding an LLC's operations could be made by majority rule, based on the percentage of each member's interest in the company. Ibid.

The LLCA provided for several alternative methods by which an LLC member may be disassociated from the LLC. One such procedure was expulsion of an LLC member by "judicial determination" under N.J.S.A. 42:2B-24(b)(3).[4] The statute

---

[4] Alternatively, an LLC member could be expelled in accordance with the terms of the operating agreement. N.J.S.A. 42:2B-24(b)(1). Unless otherwise provided in an operating agreement, or with the written consent of all members, an LLC member could be disassociated by resignation, N.J.S.A. 42:2B-24(a)(1); by virtue of an event "agreed to in the operating agreement as causing the member's dissociation," N.J.S.A. 42:2B-24(a)(2); or by the occurrence of the member's bankruptcy and other events

14

provided that a member shall be disassociated from a limited liability company under the following circumstances:

> [O]n application by the limited liability company or another member, the member's expulsion by judicial determination because:
>
> (a) the member engaged in wrongful conduct that adversely and materially affected the limited liability company's business;
>
> (b) the member willfully or persistently committed a material breach of the operating agreement; or
>
> (c) the member engaged in conduct relating to the limited liability company business which makes it not reasonably practicable to carry on the business with the member as a member of the limited liability company[.]
>
> [N.J.S.A. 42:2B-24(b)(3)(a)-(c).]

Accordingly, if a court makes a judicial finding that an LLC member meets the standard of one of the three subsections, it must grant the remedy of expulsion. Ibid. In the wake of a judicial determination disassociating the LLC member from the LLC, that member's interest is immediately limited to the "rights of an assignee of a member's limited liability

---

enumerated in the statute, N.J.S.A. 42:2B-24(a)(3)(a) to -(d). In addition, by unanimous vote of the LLC members, a member could be expelled from the LLC if "it is unlawful to carry on the [LLC] with that member;" in the event of certain transfers of the LLC member's interest in the LLC; within 90 days of certain events affecting the legal status of a corporate LLC member; or in case of the dissolution and windup of an LLC member that is itself an LLC or partnership. N.J.S.A. 42:2B-24(b)(2)(a)-(d).

15

interest[,]" subject to the provisions of N.J.S.A. 42:2B-39, which addressed determination of the fair value of the LLC distribution. N.J.S.A. 42:2B-24.1. In that event, the member may no longer take part in decisions affecting the company, and may lose part or all of his or her investment in the business.

B.

We construe subsection 3(c), which authorized the expulsion of an LLC member by judicial determination, based on the member's "conduct relating to the [LLC] which makes it not reasonably practicable to carry on the business with the member as a member of the [LLC.]" N.J.S.A. 42:2B-24(b)(3)(c).

The Legislature directs that when we interpret its statutes, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. If the statutory language is clear, the inquiry ends, because "the sole function of the courts is to enforce [the statute] according to its terms." Velasquez ex rel. Velasquez v. Jiminez, 172 N.J. 240, 256 (2002) (quoting Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392 (2001)).

The LLCA did not define the term "not reasonably practicable," or specifically describe the conduct by an LLC

16

member that implicates subsection 3(c). Its legislative history was also silent with respect to that question. L. 1997, c. 139 § 13 (adding language of "not reasonably practicable" to N.J.S.A. 42:2B-24(b)(3)(c)).[5] Moreover, when the Legislature repealed the LLCA and replaced it with the RULLCA, retaining the "not reasonably practicable" language in the new statute, it did not define the term. L. 2012, c. 50 § 46.[6]

We are, however, assisted in discerning the Legislature's intent by comparing subsection 3(c) with subsection 3(a), which provided an alternative ground for the expulsion of an LLC member by "judicial determination." N.J.S.A. 42:2B-24(b)(3)(a), (c); see also L.A. v. Board of Educ. of Trenton, 221 N.J. 192, 201 (2015) (noting that "[w]hen, as here, an issue concerns more than one statutory provision, '[r]elated parts of an overall scheme can . . . provide relevant context.'") (second and third alterations in original) (quoting Beim v. Hulfish, 216 N.J. 484,

---

[5] The "not reasonably practicable" language of subsection 3(c) closely tracks the language of Section 601(6) of the Uniform Limited Liability Company Act (Uniform Act). The Uniform Act includes no commentary addressing the meaning of that term. Unif. Ltd. Liab. Co. Act § 601(6) (Nat'l Conference of Comm'rs on Unif. Laws 1996).

[6] In the RULLCA, the Legislature retained the text of N.J.S.A. 42:2B-24(b)(3), amended only to substitute the term "judicial determination" for "judicial order" and to make other minor changes. Compare N.J.S.A. 42:2B-24(b)(3), with N.J.S.A. 42:2C-46(e)(3). For purposes of the "not reasonably practicable" standard analyzed in this opinion, the two statutes are identical.

17

498 (2014)).  Subsection 3(a) required finding that "the member engaged in wrongful conduct that adversely and materially affected the limited liability company's business[.]"  N.J.S.A. 42:2B-24(b)(3)(a).  Subsection 3(c) did not require that the LLC member's conduct be "wrongful" in order to warrant expulsion of that member.  In that regard, subsection 3(c) was more expansive than subsection 3(a).

The language of subsection 3(c) differed from the language of subsection 3(a) in a second respect.  Subsection 3(a) involved any "wrongful conduct" by an LLC member that has "adversely and materially affected [the LLC's] business."  N.J.S.A. 42:2B-24(b)(3)(a).  Under subsection 3(c), a court considers only conduct by the LLC member "relating to the limited liability company business."  N.J.S.A. 42:2B-24(b)(3)(c).  Thus, the Legislature clearly did not intend that disagreements and disputes among LLC members that bear no nexus to the LLC's business will justify a member's expulsion under subsection 3(c).

Subsections 3(a) and 3(c) used different language to describe the impact that the LLC member's "conduct" must have on the LLC in order to warrant expulsion.  To disassociate an LLC member from the LLC under subsection 3(a), a court must find that the member's wrongful conduct has "adversely and materially affected" the company's business.  N.J.S.A. 42:2B-24(b)(3)(a).

18

That language suggests that to justify expulsion under subsection 3(a), the member's "wrongful conduct" must have damaged the LLC's business in the past. Ibid. In contrast, subsection 3(c) did not mandate a finding that the LLC member's conduct has materially affected the business. N.J.S.A. 42:2B-24(b)(3)(c). Under subsection 3(c), the court prospectively analyzes the impact of that conduct on the LLC's future.

Significantly, the Legislature did not authorize a court to premise expulsion under subsection 3(c) on a finding that it would be more challenging or complicated for other members to run the business with the LLC member than without him. Nor does the statute permit the LLC members to expel a member to avoid sharing the LLC's profits with that member. Instead, the Legislature prescribed a stringent standard of prospective harm: the LLC member's conduct must be so disruptive that it is "not reasonably practicable" to continue the business unless that member is expelled. N.J.S.A. 42:2B-24(b)(3)(c).

Interpreting the statutory text, "[w]e ascribe to the statutory words their ordinary meaning and significance[.]" DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). Black's Law Dictionary defines "reasonable" to mean "fair, proper or moderate under the circumstances; sensible." Black's Law Dictionary 1456 (10th Ed. 2014). It defines "practicable" to denote "reasonably capable

19

of being accomplished; feasible in a particular situation." Id. at 1361. Thus, the pivotal language suggests that it must be unfeasible, despite reasonable efforts, to keep the LLC operating while the disputed member remains affiliated with it.

A review of other components of the LLCA statutory scheme confirms that subsection 3(c) is not necessarily satisfied by the mere existence of a conflict among LLC members. See In re D.J.B., 216 N.J. 433, 440 (2014) (noting "[s]tatutes must also 'be read in their entirety'") (quoting Burnett v. Cty. of Bergen, 198 N.J. 408, 421 (2009)). The LLCA's default provisions authorized majority rule in such matters as merger or consolidation, day-to-day management, and wind-up of affairs of an LLC, even if the LLC members failed to reach consensus on the conduct of the business. N.J.S.A. 42:2B-20(b)(1), -27(a)(1), -50(a). Consequently, disputes among LLC members on most issues relating to their business could be resolved by majority vote. Ibid. Thus, it is possible that, despite an impasse among LLC members regarding the company's management, an LLC could be effectively operated pursuant to the default provisions of the LLCA.

In short, LLC members seeking to expel a fellow member under subsection 3(c), or its counterpart in the RULLCA, N.J.S.A. 42:2C-46(e)(3), are required to clear a high bar. Neither provision authorizes a court to disassociate an LLC

20

member merely because there is a conflict.  N.J.S.A. 42:2B-24(b)(3)(c); N.J.S.A. 42:2C-46(e)(3).  Instead, both provisions require the court to evaluate the LLC member's conduct relating to the LLC, and assess whether the LLC can be managed notwithstanding that conduct, in accordance with the terms of an operating agreement or the default provisions of the statute. Ibid.

In that inquiry, a trial court should consider the following factors, among others that may be relevant to a particular case:  (1) the nature of the LLC member's conduct relating to the LLC's business; (2) whether, with the LLC member remaining a member, the entity may be managed so as to promote the purposes for which it was formed; (3) whether the dispute among the LLC members precludes them from working with one another to pursue the LLC's goals; (4) whether there is a deadlock among the members; (5) whether, despite that deadlock, members can make decisions on the management of the company, pursuant to the operating agreement or in accordance with applicable statutory provisions; (6) whether, due to the LLC's financial position, there is still a business to operate; and (7) whether continuing the LLC, with the LLC member remaining a member, is financially feasible.[7]

---

[7] These factors are substantially based on a standard distilled from case law in various jurisdictions by a Colorado appellate

21

A trial court considering an application to expel a member under N.J.S.A. 42:2B-24(b)(3)(c) of the LLCA, or the analogous "not reasonably practicable" standard of the RULLCA, N.J.S.A. 42:2C-46(e)(3), should conduct a case-specific analysis of the record using those factors, and other considerations raised by the record, with no requirement that all factors support expulsion, and no single factor determining the outcome.

C.

In considering IE Test's motion for partial summary judgment, the trial court's task was to view the evidential materials presented in the light most favorable to the non-moving party, and decide whether the record was "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c) (authorizing grant of summary judgment if record "show[s] that

---

court in Gagne v. Gagne, 338 P.3d 1152, 1159-60 (Colo. App. 2014). The court in Gagne construed a Colorado statute that addressed dissolution of an LLC, not the expulsion of an LLC member. That statute required, as a prerequisite to dissolution, a finding that it was "not reasonably practicable to carry on [an LLC's] business." Gagne, supra, 338 P.3d at 1159-60 (citing Colo. Rev. Stat. § 7-80-810(2) (2015)). Two of the factors addressed in Gagne, whether the management of the entity is unable or unwilling reasonably to permit or promote the purposes for which the company was formed, and whether a member or manager has engaged in misconduct, are inconsistent with subsection 3(c) of the LLCA, and we accordingly amend those factors to conform to our statute. Id. at 1160.

22

there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law"). When the factors relevant to subsection 3(c) are applied here, with the facts construed in favor of Carroll in accordance with Rule 4:46-2(c), the record reveals genuine issues of material fact that warrant the denial of partial summary judgment and preclude the remedy of expulsion.

We first review the nature of Carroll's conduct relating to the LLC's business. By his own admission, Carroll had no legal right to recover his lost investment in Instrumentation Engineering through his interest in IE Test. Nonetheless, he sought a compensation arrangement that would accomplish that goal. He unsuccessfully attempted to persuade Cupo and James to sign an operating agreement to that effect, and thereby provoked a distracting dispute among the LLC members that was never resolved. The record, however, is devoid of evidence that Carroll actively interfered with IE Test's business, or that he used the impasse over the compensation issue as an excuse to undermine that business by failing to cooperate when needed. He sought no role in the LLC's management, and participated in only one sales call on its behalf. There is no indication that he undermined IE Test to employees, vendors, or clients. In short, despite his insistence on generous compensation, Carroll permitted the LLC to operate unimpeded. Based on the summary

23

judgment record, the first factor does not weigh in favor of a finding that continuing IE Test's business with Carroll remaining an LLC member was "not reasonably practicable."

Applying the second and third factors, the court considers whether the entity may be managed with the LLC member remaining, so as to promote the purposes for which it was formed, and whether the dispute among the LLC members precludes them from working with one another to pursue the LLC's goals. As to those issues, there are genuine issues of material fact in the record.

It appears that the business operated with increasing revenue despite the deteriorating relationship between Carroll and the other LLC members. Although IE Test maintains that because it has no operating agreement, it has been unable to secure a line of credit or bank financing, the proofs that it submitted to the trial court did not substantiate that claim. Moreover, Carroll contends that before the question was disputed in court, he was never informed by Cupo or James that IE Test had difficulty in obtaining a line of credit or financing. Carroll offers to assist in the LLC's financing, if necessary. In short, the parties dispute whether Carroll's insistence on being compensated for his prior losses precluded the LLC members' common pursuit of IE Test's goals, or prevented the successful management of their business by obtaining necessary financing.

24

The fourth and fifth factors require a determination of whether there is a deadlock among the members and whether, notwithstanding such a deadlock, members can make decisions on the management of the company, pursuant to the operating agreement or in accordance with applicable statutory provisions. Those factors also weigh against the grant of partial summary judgment in this case. IE Test has not claimed, let alone established, that the three LLC members reached a deadlock regarding the company's management. Although IE Test contends that there is an impasse over the terms of an operating agreement, there is no evidence that Cupo and James proposed an alternative draft after rejecting Carroll's proposal. Moreover, even Carroll's failure to agree on a counterproposal would not, without more, justify his expulsion as an LLC member; in accordance with the LLCA, IE Test has been effectively managed without an operating agreement. With all inferences drawn in favor of Carroll, the record does not demonstrate that any "deadlock" among the LLC members threatened IE Test's business. Thus, the fourth and fifth factors do not support the trial court's grant of partial summary judgment.

Under the sixth and seventh factors, the court considers whether, due to the LLC's financial position, there is still a business to operate, and whether it is fundamentally feasible for the company to continue in business with the LLC member

25

remaining a member. Those factors similarly weigh against the trial court's grant of summary judgment on the record of this case. There is no dispute that when the trial court ruled on IE Test's motion, the business remained in operation; indeed, its revenue evidently increased despite Carroll's continued involvement. Thus, the sixth and seventh factors do not favor the remedy imposed by the trial court.

In sum, when the record is viewed in accordance with the summary judgment standard of Rule 4:46-2(c), it does not support the trial court's finding that it was "not reasonably practicable" to carry on IE Test's business with Carroll remaining an LLC member. N.J.S.A. 42:2B-24(b)(3)(c). IE Test was not entitled to a judicial determination expelling Carroll as an LLC member. Accordingly, the trial court's grant of partial summary judgment constituted error.

V.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S OPINION.

26