**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3711-19

W. JAMES MAC NAUGHTON,

     Plaintiff-Appellant,

v.

POWER LAW FIRM, LLP,
JINHEE BAE, and
MEGHAN MAIER,

     Defendants-Respondents.

_____

        Submitted April 28, 2021 – Decided July 15, 2021

        Before Judges Alvarez and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law
        Division, Sussex County, Docket No. L-0523-19.

        W. James Mac Naughton, appellant pro se.

        Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,
        attorneys for respondents (Michael P. Chipko, of
        counsel and on the brief).

PER CURIAM

Plaintiff W. James Mac Naughton appeals from a May 27, 2020 order granting summary judgment to defendants Power Law Firm, LLP, Jinhee Bae (Bae), and Meghan Maier (Maier). On appeal, plaintiff principally argues that the motion judge erred in applying the entire controversy doctrine (ECD) and Rule 4:5-1(b)(2) to dismiss his claims against defendants. We affirm, substantially for the reasons set forth in Judge David J. Weaver's comprehensive twenty-six-page written decision that accompanied the order under review.

We discern the following facts from the record. In December 2007, Roger Mac Naughton (Roger) and Madalyn Mac Naughton (Madalyn) executed a Living Trust Agreement prepared by defendant Power Law Firm, LLP. Roger was designated the initial trustee until he was unwilling or unable to serve, at which point plaintiff, George Mac Naughton (George), and Robert Titus (Bob) would serve as co-trustees. Plaintiff is Roger and Madalyn's son, and is also an attorney licensed in New Jersey. George is plaintiff's brother and Bob is plaintiff's brother-in-law. Roger died in 2008, making plaintiff, George, and Bob co-trustees.

"In . . . 2012, a dispute arose between the [c]o-[t]rustees concerning the use of a vacation home in Cape Cod, which was one of the trust's assets." Plaintiff, George, and Bob, as co-trustees, consulted defendants for legal advice

A-3711-19

regarding the management of the trust's assets. Under the advice and guidance of defendants, the co-trustees entered into an agreement, drafted by plaintiff, for the management of the trust's assets. The agreement vested complete authority over the Cape Cod residence to George and, in exchange, plaintiff and Bob had the right to use the cash accounts for their personal use, to be treated as an advance distribution of the estate.

A second dispute arose concerning plaintiff's use of the trust accounts for personal purposes. In March 2017, George and Bob consulted with defendants for legal advice concerning this dispute. Over the next several months, George and Bob worked closely with Maier. Maier sent plaintiff multiple letters informing him, among other things, that he "may be in breach of [his] fiduciary duties." In May 2017, plaintiff wrote to Maier asking "who [she] and [her] firm represent[ed] in this matter." After Maier responded that she represented George and Bob, plaintiff wrote Maier a letter indicating that he did "not agree to any payments to [her] firm or any other law firm to provide legal services to the [c]o-[t]rustees to pursue adversarial actions against [him]. [See] RPC 1.8(f)." Plaintiff specified:

> Before the [c]o-[t]rustees agree to personally retain and
> pay your firm to represent them in this matter, I ask you
> to consider the conflicts of interest that will pose.
> [Defendant] Power Law Firm LL[P] is a witness to the

2012 [a]greement and could become a witness in a lawsuit if this dispute should progress to that stage. I am also skeptical that shifting from representing the [t]rust to representing two out three [t]rustees against the other [t]rustee does not run afoul of RPC 1.7 and 1.9.

In an attempt to resolve the matter, Maier drafted a proposed promissory note, the terms of which plaintiff rejected. She then sent George and Bob an email informing them that their options were to "either draft a more friendly promissory note" or "start the litigation process." After George and Bob chose the latter option, Maier referred them to Dunn Lambert, LLC (Dunn Lambert) for purposes of litigation.

In May 2018,[1] George and Bob, represented by Dunn Lambert, filed an amended verified complaint against plaintiff. Plaintiff, who appeared pro se, filed counterclaims and cross-claims along with a form Rule 4:5-1 certification appended thereto affirming that no other litigation was pending or contemplated.[2] The matter involved extensive discovery and litigation, which included the depositions of both Bae and Maier. In September 2019, the matter

---

[1] The initial complaint was filed in January 2018.

[2] Plaintiff admittedly never amended this certification.

ultimately settled and was subsequently dismissed with prejudice in October 2019.

In November 2019, plaintiff filed a complaint against defendants alleging legal malpractice, breach of fiduciary duty, and breach of fiduciary duty to a former client. Defendants filed an answer and simultaneously moved for summary judgment, which plaintiff opposed.

On May 27, 2020, following oral argument, Judge Weaver granted defendants' motion and dismissed plaintiff's complaint. The judge held "that [p]laintiff's failure to apprise the court [of] the [initial] [a]ction . . . against [d]efendants runs afoul of the [ECD] and [Rule] 4:5-1." Plaintiff's assertions concerning the futility of amending the pleadings in the initial action were not relevant to the inquiry. Additionally, there was overwhelming evidence that plaintiff was aware of the viability of the claims he was now bringing and, in fact, the settlement even contemplated them. Thus, plaintiff's failure to join defendants in the initial action was "unreasonable and inexcusable."

Analyzing the Hobert[3] factors, which guide courts in determining whether inexcusable neglect and substantial prejudice are present, "the [judge] reache[d]

---

[3] Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229 (App. Div. 2002).

a similar conclusion." He observed that "there [was] strong evidence to suggest that this was a part of a strategy on the part" of plaintiff. Plaintiff could benefit by the "higher legal bill" generated in through two actions because his alleged attorney's fees were "his only damages."

Further, the judge found that there was no excuse for plaintiff to not at least inform the court of the other action in his <u>Rule</u> 4:5-1 certification. The judge commented that plaintiff sought to "underwrite" his expenses in the underlying action, noting that plaintiff was using the settlement of the initial lawsuit "as a sword against . . . [d]efendants to his benefit."

Additionally, the judge found defendants "would be subject to substantial prejudice." He noted that defendants were deprived of the opportunity to have "any meaningful participation in an extensive discovery process." The piecemeal litigation "prevented [defendants] from cross-examining deponents, participating in and challenging discovery, and otherwise defending themselves during the proceedings [on] which [p]laintiff now place[d] substantial emphasis." On a similar note, the judge held "[t]his extra litigation could have been avoided if [p]laintiff was upfront with his claims." He placed considerable weight on the fact that additional depositions would be required. The judge also

A-3711-19

determined plaintiff's conduct "resulted in the unnecessary expenditure of meaningful judicial resources."

Finally, the judge rejected plaintiff's claim that the entire controversy doctrine did not apply in legal malpractice claims. Citing Olds v. Donnelly, 150 N.J. 424 (1997), he determined that asserting in the initial action the malpractice claims raised in the current action would not have strained the attorney-client relationship. The judge reasoned "the relationship between [p]laintiff[] and [d]efendants was strained and untenable well before the [initial] [a]ction commenced." This appeal ensued.

It is well-settled that we review a summary judgment decision by "the same standard that governs the motion judge's determination." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged" and the party seeking this relief "is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Under the summary judgment standard, courts must consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most

favorable to the non-moving party," to decide whether the moving party was entitled to judgment as a matter of law. IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

The ECD reflects a "long-held preference that related claims and matters arising among related parties be adjudicated together rather than in separate, successive, fragmented, or piecemeal litigation." Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 443 (2011). As codified in Rule 4:30A, the ECD "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)).

In its current iteration, Rule 4:30A does not mandate the joinder of parties. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2021). However, Rule 4:5-1(b)(2) requires a party to certify in his or her initial pleading "the names of any non-party who should be joined in the action . . . or who is subject to joinder . . . because of potential liability to any party on the basis of

the same transactional facts." The disclosure requirement ensures that the "ultimate authority to control the joinder of parties and claims remains with the court; the parties may not choose to withhold related aspects of a claim from consideration." Kent Motor Cars, 207 N.J. at 446. The court may dismiss a successive action brought by a party for non-compliance if "the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action." R. 4:5-1(b)(2).

"The [ECD] . . . is constrained by principles of equity. It 'does not apply to unknown or unaccrued claims.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 99 (2019) (quoting Wadeer, 220 N.J. at 606). "In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer, 220 N.J. at 605 (citing DiTrolio v. Antiles, 142 N.J. 253, 273-74 (1995)).

With these guiding principles in mind, we discern no factual or legal basis to disturb Judge Weaver's thoughtful and thorough decision. As Judge Weaver found, plaintiff was aware as early as 2017 of the potential claims he had against defendants. Therefore, plaintiff's failure to assert the claim, or at least advise

the court of "any non-party who should be joined in the action . . . or who is subject to joinder . . . because of potential liability to any party on the basis of the same transactional facts" as required by <u>Rule</u> 4:5-1(b)(2) was "inexcusable" as it was apparently a deliberate strategy to obtain depositions and discovery to utilize in a subsequent action. We also agree that defendants were substantially prejudiced from this inexcusable failure. Defendants were deprived the opportunity to participate in the extensive discovery process in the underlying action. To permit plaintiff to duplicate that process would be unfair to defendants and, as Judge Weaver noted, unjustifiably deplete valuable judicial resources.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION