**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3130-20

DANTE ROJAS, as administrator
of the Estate of JOHAN ROJAS
and administrator ad prosequendum
for the Estate of JOHAN ROJAS,

     Plaintiff-Appellant,

v.

THE ESTATE OF VICTOR
WRIGHT, and YAZMIN MOORE,

     Defendants,

and

J & J TRANSPORTATION,

     Defendant-Respondent.

_____

Argued September 12, 2022 – Decided September 23, 2022

Before Judges Whipple, Smith and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6934-18.

Corey A. Dietz argued the cause for appellant (Brach Eichler, LLC, attorneys; Corey A. Dietz, on the briefs).

Eric A. Portuguese argued the cause for respondent (Lester Schwab Katz & Dwyer, LLP, attorneys; Felice J. Cotignola, on the brief).

PER CURIAM

This case arises from a fatal motor vehicle accident. Plaintiff Dante Rojas, as administrator of the Estate of Johan Rojas (decedent) and administrator ad prosequendum for the Estate of Johan Rojas, appeals from the June 15, 2021 order granting summary judgment to defendant J & J Transportation (J & J). We reverse and remand for trial.

I.

A.

We derive the following from the summary judgment record. Decedent was traveling eastbound on Interstate 280 at approximately 12:42 a.m. on December 10, 2016, when his vehicle collided with a disabled tractor trailer owned by J & J and operated by defendant Victor Wright.[1] Wright parked the tractor trailer on the right shoulder of the highway with the left rear tires of the

---

[1] No answer was filed on behalf of Wright and the court entered default and subsequently dismissed Wright without prejudice. Plaintiff's counsel advised the court that plaintiff will not be reinstating the claims against Wright.

trailer partially in the right lane. The initial collision redirected decedent's vehicle leftward into the center lane, where it struck a Lyft vehicle Yazmin Moore[2] was driving, and then further redirected rightward and struck the right side of the tractor trailer. In the process, decedent's vehicle struck Wright. Decedent was killed in the accident, and Wright died from his injuries approximately a month later.

Antonio Guinta was a rear seat passenger in the Lyft vehicle Moore was driving. Guinta testified at his deposition he observed decedent passing on the right side of the Lyft vehicle shortly before the accident. He indicated he saw decedent using his cell phone a minute before the collision. He also stated decedent maintained his lane and did not swerve in any way.

Moore also testified decedent did not travel into the right shoulder and at all times was in the right lane prior to the collision with the tractor trailer. Moore further indicated she did not notice the tractor trailer was in the lane of travel until she was on the shoulder of the road following the collision. Moore also did not observe any reflective triangles in the roadway prior to the collision.

---

[2] No answer was filed on behalf of Moore and the court entered default against her. Plaintiff's counsel advised the court that he subsequently agreed to dismiss the claims against her.

A-3130-20

New Jersey State Trooper Daniel Kim, who investigated the accident, testified he observed tandem tire marks measuring approximately two-tenths of a mile in the right lane of travel created by the left rear tires of the tractor trailer prior to the collision. Trooper Kim did not recall seeing any traffic cones or reflective triangles near the scene of the accident when he arrived. Wright did not place any flares on the road prior to the collision. Decedent's blood alcohol content (BAC) was .062[3] according to the New Jersey State Police report.[4]

The State Police's inspection of the tractor trailer after the accident revealed multiple violations, including: exceeding the maximum registered weight of 80,000 pounds; air leaks on numerous axles for the brake lines which maintained pressure to the brakes; the "left and right axle [one] brakes" were inoperable with rust on the friction surface; no reflective materials were on the rear of the truck; and "so many air leaks that one brake at a time could only be

---

[3] Defendant's toxicology expert calculated decedent's BAC as .074.

[4] Trooper Kim attributed the collision to decedent failing to perceive J & J's truck stopped on the right shoulder and failing to maintain directional control of his vehicle. He further attributed the crash to the position of the tractor trailer parked partially in the right lane. We did not consider these opinions in deciding this appeal. We leave it to the trial court's careful consideration as to whether these opinions will be admissible at trial.

A-3130-20

checked when inspecting the brakes." The inspection revealed a total of eighteen federal violations.

Plaintiff retained David Stopper, an expert in trucking and federal motor carrier regulations. Stopper opined Wright was operating the tractor trailer in an "out-of-service" condition at the time of the collision, and it should not have been on the highway. He further indicated the emergency brake system most likely engaged as a result of significant air pressure loss, and when Wright attempted to pull the tractor trailer off the road with the brakes dragging, he was unable to remove the entire trailer out of the travel lane. He also opined Wright failed to place appropriate reflective warning triangles behind the disabled vehicle pursuant to federal regulations.[5] In short, had it not been for Wright operating the vehicle in an out-of-service condition, being unable to pull the vehicle entirely off the roadway, and his failure to place reflective triangles to warn oncoming motorists, the fatal accident would not have occurred.

B.

The trial judge deciding the summary judgment motion indicated:

> [W]hile not necessarily accepting J & J's position that
> Rojas' actions were the sole cause of the accident, the

---

[5] James Rawle, the owner of J & J Transportation, also conceded that when a vehicle breaks down, the driver must set up reflective triangle signals to warn on-coming traffic.

5

court agrees with J & J's argument that only speculation would allow a finding that [decedent] crashed into the rear of the tractor-trailer because its position was slightly in the right lane. The tragic outcome of the accident means that plaintiff cannot produce any statement or testimony regarding the accident from [decedent's] perspective. Thus, plaintiff cannot provide any nonspeculative evidence to support a causation theory based on the position of the tractor-trailer and cannot establish J & J's liability in the absence of [Wright's] testimony.

The trial court further noted, "there is unrebutted evidence that plaintiff's decedent was impaired by alcohol . . . and was observed using his cell phone approximately one minute before the collision." Finally, the court concluded this was a case in which decedent's negligence should, as a matter of law, bar his negligence cause of action. Specifically, the court noted, "[e]ven assuming that the moving defendant was negligent in failing to maintain its tractor trailer, or that the driver Wright was negligent in leaving a portion of the tire in the roadway, a rational factfinder must conclude that [decedent's] negligence exceeds [defendants'] aggregate negligence."

## II.

Plaintiff contends defendant exclusively argued before the trial judge that decedent was the sole proximate cause of the accident. Plaintiff notes "[d]espite no parties raising an issue as to the amount of percentages of liability in either

6

the moving papers or at oral argument," the trial court determined plaintiff's negligence as a matter of law should bar his negligence claim.

Plaintiff argues the trial court's decision determining plaintiff's negligence exceeded the aggregate negligence of J & J and its driver, is incorrect and encroached upon a determination that could only have been made by a jury. Plaintiff further contends the trial court failed to appreciate the standard for summary judgment and the evidence put forth by plaintiff. Plaintiff notes while there is evidence that a witness observed decedent utilizing his cell phone a minute prior to the collision, there is no evidence to indicate what happened from that point in time until the collision. Moreover, decedent's BAC was below the legal limit. Plaintiff asserts the evidence presented is not so one-sided that defendant must prevail as a matter of law.

Defendant counters the trial court correctly granted summary judgment in defendant's favor by evaluating the comparative negligence of the parties. Defendant maintains the decedent's failure to make proper observations as he was driving was the sole proximate cause of the accident, and there is no admissible, nonspeculative evidence the accident was proximately caused by J & J's trailer being disabled and slightly in the right lane.

A-3130-20

Defendant's toxicologist, Donald Fox, Ph.D., calculated decedent's BAC at the time of the accident to be .074 and deduced that it substantially and directly impaired his ability to safely operate his vehicle. Defendant notes Dr. Fox's opinion was unrebutted. Defendant emphasizes decedent was distracted and used his cell phone shortly before the accident as he approached J & J's trailer. Defendant contends the hazard warning lights on the trailer were flashing at the time of the accident. Moreover, the tractor trailer had reflective tape affixed to the rear impact guard and vertical supports.

Defendant further argues because neither decedent nor Wright are able to offer testimony, there is no admissible, nonspeculative evidence that the accident was caused by J & J's tractor trailer being disabled and partially in the right lane.

III.

In reviewing whether the court erred in granting defendant's motion for summary judgment, we apply several well-established principles. On such a motion, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J.

520, 540 (1995); see also R. 4:46-2(c). If there is competent evidence reflecting materially disputed facts, the motion for summary judgment should be denied. See Parks v. Rogers, 176 N.J. 491, 502 (2003); Brill, 142 N.J. at 540. To grant the dispositive motion, the court must find that the evidence in the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Our de novo review of an order granting summary judgment must observe the same standards. See IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill, 142 N.J. at 540).

The trial judge articulated the correct standard for summary judgment, but was overly solicitous of defendant's comparative negligence arguments in rendering her decision. As the trial court noted, there is evidence in the record decedent consumed alcohol prior to the accident and used his cell phone "a minute" before the collision. The court further referenced the "unrebutted" testimony of defendant's toxicology expert.[6] Moreover, there is evidence

---

[6] Significantly, "a factfinder is not bound to accept the testimony of an expert witness, even if it is unrebutted by any other evidence." Torres v. Schripps, Inc., 342 N.J. Super. 419, 431 (App. Div. 2001); Model Jury Charge (Civil), 1.13, "Expert Testimony" (2018) (instructing that jurors "are not bound by the testimony of an expert[;] . . . may give it whatever weight [they] deem is appropriate[;] [and] may accept or reject all or part of an expert's opinion(s)").

 A-3130-20

decedent did not make proper observations of the disabled tractor trailer despite its hazard lights being activated. However, the court did not give proper consideration to the evidence regarding defendant's negligence.

Notably, the record reveals Wright parked J & J's disabled tractor trailer with a portion of the trailer in the lane of travel, and he failed to place reflective triangles and flares in order to warn oncoming motorists, particularly in light of the fact this accident occurred at approximately 12:42 a.m. Notwithstanding the testimony regarding decedent's cell phone use, Guinta also testified decedent maintained his lane of travel and did not swerve in any way. Moore indicated decedent did not travel into the right shoulder and at all times was in the right lane prior to the collision with the tractor trailer. Moore further testified she did not notice the flatbed of the tractor trailer was in the lane of travel until after the accident. Furthermore, plaintiff's expert opines J & J was negligent in maintaining the vehicle and, at the time of the collision, the truck should have been prohibited from being on the road.

These facts, when viewed in a light most favorable to plaintiff, raise a fact issue as to J & J's negligence. Based on the record before the court, it cannot be said as a matter of law that no reasonable juror could conclude that defendant's negligence did not exceed decedent's negligence. Rather, a rational fact finder

10

could determine defendant's negligence exceeds plaintiff's negligence, particularly when viewing the evidence in a light most favorable to plaintiff. Once plaintiff's proofs, viewed most favorably towards plaintiff, establish a genuinely disputed issue of fact as to any negligence on the part of defendant, the degree of that negligence is a jury question. See Brill, 142 N.J. at 536 (holding "if reasonable minds could differ as to whether any negligence ha[s] been shown, the motion should be denied.") (emphasis added) (quoting Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964)). The issue here concerning the degree of responsibility between these two parties similarly presents a fact-sensitive question for the jury.

It appears the trial judge analyzed the facts focusing almost exclusively on the negligence of decedent and engaged in weighing of the evidence. The trial court's function here is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill, 142 N.J. at 540. We determine the issues in this case require a trial on the merits.

Reversed and remanded for trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3130-20